(No. 12159.—Appellate Court reversed; circuit court affirmed.)

THE N. A. WILLIAMS COMPANY, Appellant, *vs.* C. J. McCARTHY *et al.*—(CHARLES S. SMITH, Appellee.)

*Opinion filed October 21, 1918.*

1. APPEALS AND ERRORS—*evidence in the record, if it is all preserved, may be relied upon to sustain the decree.* On appeal to the Appellate Court in a chancery case the appellee is entitled to have the decree sustained by the evidence if it is all preserved in the record, whether the facts so shown are the same as those found in the decree or not.

2. MECHANICS' LIENS—*one furnishing material to a public contractor has a lien on the bonds.* One who furnishes material to a public contractor which is used by him in the improvement but is not paid for is entitled to a mechanic's lien on the bonds issued to the contractor for the portion of the work completed by him before he abandoned the contract.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

HOLLETT, SAUTER & HOLLETT, for appellant.

HARRY A. BIOSSAT, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This was a bill in chancery filed by the N. A. Williams Company to enforce a lien under section 23 of the Mechanic's Lien act.

Some time during the year 1915 the city of Berwyn, of which Charles S. Smith, appellee, was mayor, entered into a contract with C. J. McCarthy for the construction of a certain sewer in said city. The money to pay for the improvement was provided for by special assessment, which was duly confirmed, and McCarthy was to be paid in bonds or warrants issued against said special assessment. McCarthy contracted to furnish the material and do the work for $3772.80. He did part of the work, and while engaged in carrying it on bought from the appellant, the N. A. Williams Company, sewer pipe amounting to $620.86, which he used in the work but did not pay for. McCarthy never completed his contract, and on September 3, 1915, appellant served notice of its claim of lien, under the statute, on the mayor, in his capacity as mayor and as president of the board of local improvements, and also on the city clerk of the said city of Berwyn. Shortly after the service of said notice of lien McCarthy in some manner came into possession and control of $1600 of the bonds issued to pay for the improvement and subsequently disposed of them to appellee for ninety cents on the dollar. Appellee, individually, as mayor and as president of the board of local improvements, the city of Berwyn, C. J. McCarthy and the unknown owners and holders of and persons interested in bonds or warrants issued to pay for the construction of the sewer, were made defendants to the bill. Answer under oath was waived, and the bill prayed an account be taken of the amount due appellant and the sum found due decreed a first lien on the bonds issued or thereafter to be issued under the contract with McCarthy, and that the defendants, or such of them as should be found liable, be required to pay the amount found due, or in default thereof that a lien be enforced against the bonds.

Appellee answered, individually, as mayor and as president of the board of local improvements. Answer under oath was waived, but the answer was sworn to by appellee

for the reason, as stated in the briefs, that it was used in support of a motion of appellee to vacate a default entered against him. The answer denied appellee was served with notice of appellant's claim for a lien, and denied that he, as mayor, as president of the board of local improvements or individually, had in his possession or control any bonds due or deliverable to McCarthy under his contract, and denied there was any money, warrants or bonds due McCarthy in which appellant had any right, title or interest, and denied appellant was entitled to the relief prayed for. The city of Berwyn filed a separate answer and McCarthy was defaulted.

The cause was referred to a master in chancery to take the proofs and report his conclusions. The master heard the testimony and reported that $1600 in bonds was illegally delivered to McCarthy as against appellant; that appellant was entitled to a decree against the city of Berwyn for $620.86, and that the appellant had also a prior lien upon said bonds "in the possession of or under the control of said Diamond-Smith Company or said Charles S. Smith for $620.86." He recommended a decree requiring the Diamond-Smith Company and Charles S. Smith to deliver up within three days to the clerk of the court said bonds, to be sold under the order of the court for the payment of the amount found due appellant, and that in case of a failure to deliver the bonds appellant have a personal decree against appellee for the sum of $620.86 and costs and that execution issue therefor, the decree to further provide that the lien be satisfied upon a single payment of said sum and costs. The chancellor entered a decree in accordance with the recommendation of the master. Charles S. Smith alone prosecuted an appeal to the Appellate Court for the First District. That court reversed the decree because the decree found that the consideration for the purchase of the bonds from McCarthy was paid by the Diamond-Smith Company, a corporation; that the bonds were delivered to

the corporation through appellee as its treasurer, and held that there was no personal liability on appellee's part to justify the decree against him. The cause was remanded to the circuit court for further proceedings "not inconsistent with the views expressed in the opinion of the court this day filed herein." The Appellate Court granted a certificate of importance, reciting "that this cause involves questions of law of such importance, on account of principal and collateral interests involved, as that it should be passed upon by the Supreme Court," and granted an appeal to this court.

The validity of the bonds issued to McCarthy and the validity of the claim of appellant for a lien on said bonds is not denied. Appellee, who was mayor of the city of Berwyn, contends that appellant was not entitled to the relief prayed against him, for the reason that, as he claims, he did not buy the bonds from McCarthy on his individual account, but that as treasurer of a South Dakota corporation (the Diamond-Smith Company) he bought the bonds with the money of said corporation,—and that, in substance, is what the decree finds the facts to be. The decree directs and orders that appellee, individually and as treasurer of the Diamond-Smith Company, deliver up the bonds to the clerk within three days, and that in default thereof appellant recover against appellee a personal decree for the sum of $620.86, and that execution issue therefor.

There is no dispute that appellee, personally or as treasurer of the Diamond-Smith Company, is in possession of the bonds. McCarthy was unable to complete his contract and was unable to pay the indebtedness incurred for labor and materials. He turned over the written contract to the appellee and abandoned its completion, and the work was completed under another contract entered into by the city with another contractor. McCarthy testified the appellee showed him appellant's notice of claim for a lien and asked him to turn over the bonds due him for the work done. Appellee made out a paper with a printed heading of the

Diamond-Smith Company, and said that the company and he were all one. He said he would finish the work and pay the bills if McCarthy would turn over the bonds to him. The witness did not remember what was written on the paper but he signed it and left it with appellee. He testified he had never received the bonds but that he saw them in appellee's office.

Appellee testified McCarthy came to his office with the bonds and said he had received them from the city clerk. Upon appellee asking him what he was going to do with them, he replied that he was going to sell them to Potter for ninety-two cents on the dollar. Appellee inquired if McCarthy had enough money to pay off all claims, and McCarthy said he had not. Appellee testified he wanted to get the bonds under his control, and that he told McCarthy the Diamond-Smith Company would buy them at ninety cents on the dollar and the money could be paid toward the settlement of the claims against him. The bonds were bought and $1440 paid out on claims.

The instrument McCarthy signed at the time he sold the bonds was not offered in evidence. In his testimony appellee admitted he had, previous to the purchase of the bonds, been served with a notice of appellant's claim for a lien; that he wanted to get control of the bonds so that he could untangle the difficulties they were in and get the sewer running. On cross-examination he testified he bought the bonds as treasurer of the Diamond-Smith Company and "they are still under our control;" that the principal office of that company was in Pierre, South Dakota; that the Chicago office was wherever appellee was; that he was the only officer in Chicago and that he did not know who was secretary. He testified, "I am the whole works." In answer to the question, "You are the executive officer and all the works?" he answered, "All the works."

Appellee's name is Charles S. Smith, and we cannot escape the conviction that the Diamond-Smith corporation was

a subterfuge. There is no proof that the corporation had any stockholders or any officers other than appellee. He was mayor of the city of Berwyn and bought the bonds for two dollars a hundred less than McCarthy said he had been offered for them and $10 less than their face value. Under the law appellant had a lien on the bonds whether they were bought by the Diamond-Smith Company or by appellee, but as no personal service was had on the corporation no personal decree could be entered against it. In our opinion the facts justified a decree finding that the bonds were purchased by the appellee on his own account. He testified he wanted to get them under his control legally, so that he could untangle the difficulty they were in in the construction of the sewer.

The evidence was all preserved in the record, and appellant here, who was appellee in the Appellate Court, was entitled to have the decree sustained upon the facts in the record whether they were the same as those found in the decree or not. (*Pelouze* v. *Slaughter,* 241 Ill. 215.) In *Hughs* v. *Washington,* 65 Ill. 245, the court said: "On an appeal from the decree each party has the right to rely upon the evidence heard in the court below to test the correctness of the conclusions at which the court has arrived, and in such a case the finding of the facts in the decree will be controlled by the evidence in the record, where it appears that it has all been preserved. The Appellate Court will look into the record to see whether the evidence warrants the court in its action in finding the facts stated in the decree, and if, from all the evidence that was heard, it appears the chancellor erred in the finding of the facts, the Appellate Court will disregard the findings and will be controlled by the evidence."

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.

*Judgment of Appellate Court reversed.*
*Decree of circuit court affirmed.*