(Nos. 12384-12385.—Judgments reversed.)

## THE CHICAGO MOTOR BUS COMPANY, Appellant, *vs.* THE CHICAGO STAGE COMPANY, Appellee.

*Opinion filed February 20, 1919—Rehearing denied April 3, 1919.*

1. PUBLIC UTILITIES—*commission's findings of fact are prima facie true.* The statute makes the findings and conclusions of the Public Utilities Commission on questions of fact *prima facie* true, and its orders and decisions are not to be set aside unless clearly against the manifest weight of the evidence or outside the jurisdiction of the commission.

2. SAME—*orders of the commission are prima facie reasonable.* The rules, regulations, orders or decisions of the Public Utilities Commission are *prima facie* reasonable, and the burden of proof upon all the issues raised by an appeal is upon the person or corporation appealing.

3. SAME—*when commission may determine which of two competing corporations is more capable of serving the public.* In carrying out the policy of the Public Utilities Commission not to grant certificates of convenience and necessity to two competing transportation companies in the same territory the commission has power to determine which corporation is more capable of serving the public, and if both are shown to be equally capable and the status of both is the same the action of the commissioners in granting a certificate to one of them cannot be said to be unreasonable.

4. SAME—*priority in time is an element to be considered in granting certificate to one of two competing corporations.* Mere priority in time of application for a certificate of convenience and necessity does not, of itself, govern the granting of the certificate to one of two competing corporations, but it is an element to be considered in determining the reasonableness of the order of the Public Utilities Commission.

5. SAME—*when order of commission giving preference to one of two competing bus lines is unreasonable.* An order of the Public Utilities Commission granting a certificate of convenience and necessity to one of two competing motor bus companies and refusing it to the other is unreasonable where there is no showing that the former company is more capable of serving the public than the latter, which was prior in time of application and had expended much money in operating a motor bus line in another part of the city without any complaint as to the service rendered, while the other company was just entering the field and had operated no buses in the city.

6. SAME—*Public Utilities Commission has no arbitrary powers.* The Public Utilities Commission is given no arbitrary powers by the statute but its orders and decisions are subject to review and must be reasonable and lawful.

7. SAME—*what necessary to justify setting aside order of commission as unreasonable.* An order of the Public Utilities Commission made in the lawful exercise of its powers will not be set aside merely because the court of review is of opinion that the order was unwise or inexpedient, but an order may be set aside as unreasonable where it is the result of arbitrary action, not having a reasonable basis in the evidence for the exercise of the discretionary powers of the commission.

CARTER and DUNN, JJ., dissenting.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

FYFFE, RYNER & DALE, and WILLIAM McKINLEY, (COLIN C. H. FYFFE, of counsel,) for appellant.

MAYER, MEYER, AUSTRIAN & PLATT, (EDWARD D. SHURTLEFF, CHARLES E. WOODWARD, FREDERIC BURNHAM, WILLIAM H. PAGE, and POWELL C. GRONER, of counsel,) for appellee.

EDWARD J. BRUNDAGE, Attorney General, (GEORGE T. BUCKINGHAM, WILLIAM E. TRAUTMANN, and ALBERT D. RODENBERG, of counsel,) for the State Public Utilities Commission.

Mr. JUSTICE FARMER delivered the opinion of the court:

This appeal from the circuit court of Sangamon county brings up for review the judgment of that court affirming two orders and decisions of the Public Utilities Commission.

Appellant, the Chicago Motor Bus Company, was incorporated in 1913 to operate motor bus lines in the city of Chicago. In February, 1914, it filed its application with the Public Utilities Commission for a certificate of necessity and convenience. That body granted the certificate

December 31, 1914, specifying no routes but covering the entire city of Chicago. At that time appellant had not secured a license from the municipal authorities, and the order granting the certificate was conditioned upon its securing a license from the local authorities having supervision of parks, boulevards and streets in said city. The evidence shows that some time was required and numerous meetings and conferences held by appellant in an endeavor to secure an ordinance or license from the park commissioners. In June, 1916, the Lincoln Park Commissioners enacted an ordinance licensing appellant to operate a line of buses over certain specific routes under their jurisdiction on the north side. This ordinance required appellant to pay in advance to the commissioners $20,000, to be applied upon the annual sums required to be paid by appellant for the thirteenth, fourteenth and fifteenth years of the grant for the operation of its bus line, and the further sum of $5000 was required to be paid as a guaranty that appellant would abide by the terms of the ordinance and the regulations of the park commissioners. The ordinance required appellant to pay for the privilege of operating its bus lines, annually, a sum equal to three per cent of its gross receipts the first five years but not less than $10,000 any one year. The second five years it was required to pay three and one-half per cent, annually, of its gross receipts, with a minimum of $11,000 a year; and the last five years it was required to pay four per cent of its gross annual receipts, with the minimum fixed at $12,000 per year. Appellant filed its acceptance of the ordinance, paid the $20,000 cash and the further sum of $5000 was put up as a guaranty. Appellant immediately made contracts for some forty buses and ten additional driving units, at a total cost of some $370,000. In September, 1916, appellant filed its petition with the Public Utilities Commission for a certificate of convenience and necessity for the operation of its buses over the lines specified in the Lincoln

Park ordinance, and represented that it would not be prepared to operate its lines of motor buses until about February, 1917. A new certificate of convenience and necessity was thereupon granted appellant January 15, 1917, to operate its buses on the north side.

On January 6, 1917, appellant applied for a certificate to operate its buses over the streets and boulevards on the south side, and in its application stated the certificate previously granted December 31, 1914, was about to expire for the reason that appellant had not yet begun the operation of its buses on the streets, roadways and boulevards on the south side. That application was for a certificate over designated routes. March 7, 1917, the South Park Commissioners adopted an ordinance authorizing the appellant to operate its buses over certain boulevards, streets and parks designated and under their control and upon certain terms and conditions specified. The application of the appellant asked for a certificate to operate over a street or streets not under the control of the park commissioners, and property owners protested to the Public Utilities Commission. The objectors appear to have been persons living on Woodlawn avenue. A public hearing was set for April 25, 1917, and notice was given of said hearing. On the day of the hearing the appellant withdrew its application to operate on Woodlawn avenue, and no other objections having been made, one of the commissioners inquired if anyone present, representing himself or any other person, wished to object to the issuance of the certificate of convenience and necessity. Thereupon counsel for appellee, the Chicago Stage Company, objected and orally asked to be permitted to intervene. That company had received its final certificate of incorporation the day previous, and on April 25, 1917, filed its petition for a certificate of convenience and necessity for the operation of motor buses on the south side covering substantially the same routes asked for by appellant. Each corporation filed objections to the granting of the

certificate of convenience and necessity to the other. Thereafter there were numerous hearings before the commission on different dates and a large amount of evidence, oral and documentary, heard. At a hearing before the commission July 12, 1917, the applications of the two corporations were consolidated by the commission and thereafter heard together. Hearings were had on various dates until October 9, 1917, when the hearings were concluded and the case taken under advisement by the commission. On January 8, 1918, the commission entered its order and decision on the application of the Chicago Stage Company. After setting out a history of the controversy between the two corporations, the commission found "that the Chicago Stage Company, by reason of prior experience and technical skill of its officers and directors and by reason of its financial ability, is in a position to adequately serve the public needs for motor transportation" along and over the streets, highways, boulevards and parkways of the city of Chicago, and granted the Chicago Stage Company a certificate of necessity and convenience for the operation of its buses over designated boulevards and public ways on the south side. On the same day the commission filed its order and decision finding that the public convenience and welfare did not require the operation of two competing lines of motor buses. The order recited that the commission had that day granted the Chicago Stage Company a certificate of convenience and necessity to operate buses over substantially the same lines for which the certificate was asked by the Chicago Motor Bus Company, and its application was denied. From these orders the Chicago Motor Bus Company appealed to the circuit court of Sangamon county, where the two cases were treated and heard as one and the orders and decisions of the Public Utilities Commission were affirmed. The Chicago Motor Bus Company has prosecuted further appeals to this court. But one set of briefs and abstracts has been filed and the two cases will be disposed of in one opinion.

Section 68 of the Public Utilities act authorizes an appeal from the order and decision of the Public Utilities Commission for the purpose of determining their reasonableness or lawfulness. The findings and conclusions of the commission on questions of fact shall be held *prima facie* to be true, and the order or decision shall not be set aside unless it clearly appears to be against the manifest weight of the evidence presented before the commission or that the order or decision was outside the jurisdiction of the commission. The rules, regulations, orders or decisions of the commission shall be held *prima facie* reasonable, and the burden of proof upon all the issues raised by the appeal is upon the person or corporation appealing. A further appeal is allowed from the judgment of the circuit court to this court.

The contention of appellant is that the action of the commission was unreasonable and an unauthorized exercise of arbitrary power. In support of this position it is pointed out that the proof showed, without contradiction, that appellant was incorporated in 1913 for the purpose of operating motor buses over parks, boulevards and streets in the city of Chicago and began at once negotiations with the proper municipal authorities for permission to operate over and upon boulevards, driveways and parks. In December, 1914, on appellant's application and petition it was granted a certificate of necessity and convenience for the operation of motor buses over and upon all streets and public ways in the city of Chicago, conditioned upon its obtaining the necessary license from the proper local authorities. In February, 1915, and before appellant had obtained such license, it began the operation of one bus as a test and in the summer of 1915 it operated two buses. After much effort and many meetings and conferences the Lincoln Park Commissioners in July, 1916, adopted an ordinance, the terms and conditions of which are above referred to, authorizing appellant to operate its buses on the north side

over certain routes specified, which ordinance was accepted and its precedent conditions complied with by appellant. It had spent much time and considerable money in designing and developing a type of motor bus adapted to operation in the city of Chicago before the license to operate was granted by the Lincoln Park Commissioners. Immediately upon securing the license from the Lincoln Park Commissioners appellant contracted for a large number of buses at a total cost of $370,000. It had eleven buses in operation on the north side in March, 1917, and on June 8 of the same year was operating forty buses. The superintendent of appellant testified that from March 25 to August 31, 1917, the number of passengers carried was approximately 1,950,000. The appellant purchased property and built a garage for use in its business at a cost of about $150,000. Its total expenditures in developing its business were approximately $600,000. Appellant never operated on the south side because it had been unable prior to March, 1917, to secure the necessary licenses from the proper local authorities. The evidence shows it was active in endeavoring to secure a license for operation on the south side, and finally secured the necessary license from the South Park Commissioners March 7, 1917. In the January previous to securing said license appellant applied to the Public Utilities Commission for a certificate of convenience and necessity to operate over certain specified routes on the south side. In its application the appellant stated the certificate granted it by the commission in December, 1914, was about to expire for the reason that actual operation had not been commenced by it and that it desired a certificate for operation over certain routes designated. Under an amended application filed with the commission April 10, 1917, it was shown appellant had secured the passage of an ordinance by the South Park Commissioners March 7, 1917, authorizing it to operate over certain streets and boulevards under the park commissioners' jurisdiction. The amended appli-

cation stated appellant desired to operate on certain other streets and public ways not under the jurisdiction of the park commissioners, which were shown on a map attached to the petition and embraced Woodlawn avenue between Forty-fifth street and Midway Plaisance. A public hearing on its amended application was fixed for April 25 and notice given of the time and place of the hearing. On the 12th of April, 1917, residents and property owners on Wood-lawn avenue filed protests with the commission against ap-pellant being permitted to operate on that street. Until April 25 no objections or protests against the application of appellant for a certificate had been made except by prop-erty owners and residents on Woodlawn avenue, and when the application came on again for hearing on April 25 ap-pellant withdrew its application as to Woodlawn avenue, thereby removing that objection. After that had been done the commission inquired if there was anyone present who wished to object to the certificate being granted, and there-upon counsel for the Chicago Stage Company, appellee, an-nounced that company objected, and stated it had that day filed its application for a certificate of convenience and ne-cessity to operate motor buses over substantially the same streets as those mentioned in appellant's application. The Chicago Stage Company had been granted a certificate of incorporation the day before and had not secured any license or permit from the local authorities. Counsel stated the Chicago Stage Company had prepared and submitted to the South Park Commissioners a form of ordinance pro-posed. At that time appellant was, and had been for some months, operating forty or more buses on the north side and no complaint had ever been made to the commission of the service given.

Counsel for appellant claims,—and we think the claim has substantial basis,—that it was, if not indispensable, at least important to the success of appellant's enterprise that it be permitted to operate on the south side, and that from

the time of its incorporation it continued its efforts to secure permission to do so until it secured the ordinance on March 17, 1917.

It appears from remarks made by one of the then commissioners, April 25, 1917, that the reason of the commission for granting the Chicago Stage Company a hearing before issuing the certificate was that it might have an opportunity to show that it could render more efficient and better service than appellant. If, in pursuance of the policy of the commission, it would not grant certificates to competing lines, it would undoubtedly, when the two corporations were asking a certificate for the same purpose, have authority to determine which corporation was capable of best serving the public. If both were equally capable and the status of both was the same there would be no basis for a claim that the action of the commissioners in granting a certificate to one of them was unreasonable. But it seems obvious to us that in view of the fact that appellant had been so long in the field, had spent large sums of money in securing the right to operate and in developing its business, as against the Chicago Stage Company, which had just come into existence and had spent no money in the enterprise, the former should in all justice be entitled to the preference unless the public interests would be best served by the latter company. Mere priority in time of application would not, of itself, govern the granting of the certificate but is an element to be considered, in connection with all other elements and facts, in determining the reasonableness of the action of the commissioners. In other words, if it appeared that appellant had for months served the public efficiently and satisfactorily on the north side and that it was able to do so on the south side, to deny it a certificate and award it to the Chicago Stage Company would seem to be so arbitrary as to be unreasonable. This court said in *Public Utilities Com.* v. *Toledo, St. Louis and Western Railroad Co.* 267 Ill. 93, the Public Utilities Commis-

sion is given no arbitrary powers by the statute and that its orders must be lawful and reasonable. The statute makes the commission's findings of fact *prima facie* true, and its orders and decisions are not to be set aside unless clearly against the manifest weight of the evidence. It is not sufficient, to justify a reversal of a reasonable order of the commission made in the lawful exercise of its powers, that a court of review should be of opinion the order was unwise or inexpedient. To reverse and set aside an order on the ground that it is unreasonable it must be an arbitrary action, not resting on a reasonable basis for the exercise of the discretionary powers of the commission. The orders and decisions are subject to review as to the reasonableness of the commission's conclusions, and an unreasonable order is unlawful. Reviewing courts will examine the facts upon which the order is based, and if there is substantial evidence to sustain the order,—not a mere scintilla of proof,—the order will be sustained. *Inter-State Commerce Com.* v. *Union Pacific Railroad Co.* 222 U. S. 541; *Public Utilities Com.* v. *Chicago and West Towns Railway Co.* 275 Ill. 555; *Public Utilities Com.* v. *Terminal Railroad Ass'n*, 281 id. 181; *Public Utilities Com.* v. *Toledo, St. Louis and Western Railroad Co. supra.*

The commission found "that the Chicago Stage Company, by reason of prior experience and technical skill of its officers and directors and by reason of its financial ability, is in a position to adequately serve the public needs for motor bus transportation" over the streets, boulevards and parkways of the city of Chicago, and therefore ordered that it be granted a certificate of necessity and convenience for the operation of motor buses on the south side upon its securing permission from the proper local authorities. As to the Chicago Motor Bus Company's application, the commission found the operation on the south side of the business it was organized for was "not necessary for the public convenience and welfare, inasmuch as the said com-

mission has this day granted to the Chicago Stage Company a certificate of convenience and necessity to maintain and operate motor bus lines along and over substantially the same streets, avenues, highways, public places, bridges, boulevards and parkways as is prayed for in the petition of the Chicago Motor Bus Company," and that the convenience and welfare of the public did not require the operation of two competing companies over the same routes. For that reason appellant was denied a certificate. The commission did not find that appellant could not serve the public as efficiently and well as the Chicago Stage Company. It found the latter company, by reason of previous experience, technical skill of its officers and directors and financial ability, was in a position to adequately serve the public needs, but did not find appellant was lacking in any of these elements and was not in a position to adequately serve the public needs. The reason given for refusing it a certificate was that the commission had that day granted a certificate to the Chicago Stage Company and that the public convenience and welfare did not require two competing companies. If both companies were equally capable of rendering adequate service to the public, fairness and justice required, it seems to us, that preference should have been given appellant, in view of the time and money it had spent in developing its business and rendering adequate service to the public. The Chicago Stage Company had not entered the field at the time its application for a certificate was made.

Appellee's counsel insist the order of the commission was justified by the evidence. In brief, the substance of the important evidence relied upon is, that it was proved the stock of the Chicago Stage Company is owned by the New York Transportation Company, the directors of which are wealthy men and are largely the directors of the Chicago Stage Company. The New York Transportation Company is a New Jersey corporation and owns the stock of

the Fifth Avenue Coach Company of New York. The New York Transportation Company's stock, or a large amount of it, is owned by the Interborough Consolidated Corporation. The Fifth Avenue Coach Company has been for some years operating motor bus lines in New York City. R. W. Meade testified he was president and general manager of the New York Transportation Company, the Fifth Avenue Coach Company and the Chicago Stage Company. He also testified as to the amount of time given and the efforts required in developing and placing on a sound financial basis the business of the Fifth Avenue Coach Company. He further testified that he had investigated the Chicago field and familiarized himself with the type and cost of bus required there, which was a somewhat different type from the bus used in New York. We do not understand it is claimed the Chicago Stage Company had the necessary means to install and place in operation its motor bus service, but an agreement made August 15, 1917, between the Chicago Stage Company and the New York Transportation Company was introduced in evidence, by which the latter company agreed to furnish the stage company, if necessary, $2,000,000 for use in the development and operation of its bus lines in Chicago. Aside from this promised financial support by the New York Transportation Company it was not shown that the stage company was any better prepared, financially, for rendering service than appellant. The Chicago Motor Bus Company was not shown to be a wealthy organization, but, so far as disclosed by the testimony, it had never been hampered for funds in developing and operating its bus lines and was not financially embarrassed. It had operated a large fleet of buses on the north side for several months, and no complaints had ever been made to the Public Utilities Commission of inadequacy or inefficiency of the service rendered. The directors of the group of interlocking corporations of which the Chicago Stage Company was one were experienced in

the operation of motor bus lines in New York City but had no experience in that line in Chicago, which required, by reason of overhead wires and other obstructions, a different type of bus from that operated by the Fifth Avenue Coach Company. Appellant had designed and developed a type of bus adapted to the Chicago field and had the buses in successful operation for several months. There was no basis in the evidence for a finding by the commission that the stage company was, by reason of the technical skill and experience of its directors, better prepared to render adequate service to the public in Chicago than appellant, and no such finding was made.

It is argued by counsel for appellee that by reason of the experience and skill of the directors of the Chicago Stage Company and the wealth of the directors of the corporation promising the stage company financial support, the commission was justified in granting a certificate of necessity and convenience to the stage company and refusing it to appellant. As we have before stated, the prior application, work and expenditure of money by appellant in the Chicago field as a matter of fairness and justice entitled it to the preference over the stage company, unless it was shown, at least by some evidence, that the stage company was in a position to render better service to the public than appellant. There is no express provision of the statute to that effect, but the commission possesses no arbitrary power to disregard such condition without any reasonable basis from the standpoint of the public interests. Without any evidence that the public interest would be best served by granting a certificate to the stage company and denying the application of appellant, an order and decision were entered granting the application of the stage company, and on the same day an order was entered denying the application of appellant on the ground that a certificate had been granted the stage company and the public interest did not require granting a certificate to two companies. We are unable to

take any other view of the orders and decisions of the Public Utilities Commission than that, under the state of facts disclosed by this record, said decisions were unreasonable.

The judgment of the circuit court is reversed and the orders and decisions of the Public Utilities Commission are set aside.

*Judgment reversed and order and decision of Utilities Commission set aside.*

CARTER and DUNN, JJ., dissenting:

We do not concur in the conclusion reached in the foregoing opinion. The finding of the Public Utilities Commission, in our judgment, in this proceeding is binding on the courts. The right to review the findings of the Public Utilities Commission in a proceeding such as this is limited to the questions whether the commission acted within the scope of its authority, whether the finding is without any foundation in the evidence, or whether a constitutional right has been infringed by such finding. (*Chicago, Milwaukee and St. Paul Railway Co.* v. *Public Utilities Com.* 268 Ill. 49; *Inter-State Commerce Com.* v. *Union Pacific Railroad Co.* 222 U. S. 541.) Orders of the Public Utilities Commission are entitled to great weight, and can only be set aside if found arbitrary or unreasonable or in clear violation of a rule of law. Clearly, it was not intended by this law that the courts should interfere with the orders and findings of the commission or review them further than is necessary to keep them within the law and protect the constitutional rights of the corporations over which they were given control. (*People* v. *McCall,* 219 N. Y. 84.) The law never intended the court to put itself in the place of the commission to try the matter anew as a legislative body, substituting its findings for those of the commission. If any such statute so provided it would be unconstitutional as a delegation to the judiciary of non-judicial powers.

The courts must not usurp legislative or administrative functions by setting aside a legislative or administrative order on their own conception of its wisdom. (*State* v. *Great Northern Railway Co.* 130 Minn. 57.) The courts will not interfere with an order of the commission when it does not appear from the record that such order is unlawful or unreasonable. (*Settle* v. *Public Utilities Com.* 94 Ohio St. 417.) If, as sometimes happens, two companies apply for a certificate to construct a road between the same points, and if public convenience and necessity require the construction of one road, that is a question to be determined under the statute, and from necessity the railroad commissioners have jurisdiction to determine, in the case of conflicting applications, whether the certificate should be issued to both or only one, and if one, which one. (*People* v. *Board of Railroad Comrs.* 38 N. Y. Supp. 528.) In this last case it was stated, on page 533, that when it appears that public convenience and necessity require the construction of a road between given termini, then to hold that the persons first associated together to build the road between such termini are entitled to have the certificate, is to deprive the commissioners of a large part, if not all, of the discretion supposed to have been conferred upon them.

Under repeated decisions of the New York courts construing their public utilities statute it is clear that the Railroad Commission or Public Utilities Commission will not be interfered with by the courts in a matter of this kind, which rests in the discretion of such Public Utilities Commission, and it seems necessarily to follow that the Illinois Public Utilities act, being based largely upon the New York act, must be presumed to have been adopted with the understanding that the settled construction placed upon the New York act by the New York courts was to control in construing the Illinois act. *Tatman* v. *Strader,* 23 Ill. 439; *People* v. *Griffith,* 245 id. 532; *Suburban Ice Co.* v. *Industrial Board,* 274 id. 630.

It is urged by counsel for appellant, and seems, in part at least, to be so held in the opinion of the court, that the Chicago Motor Bus Company was entitled to the certificate, first, because of priority of application on the north side; second, because it received a franchise from the South Park board; and third, that to decide as did the Public Utilities Commission was taking the fruits of the labor from the Chicago Motor Bus Company. All these points were urged before the Public Utilities Commission and were matters that were properly urged there, to be passed upon within the sound discretion of the commission. The commission, in effect, decided that the public would be best served by a grant to the Chicago Stage Company. The chief consideration in a matter of this kind is, not which applicant was first in point of time, but which applicant, under the facts and circumstances, will best serve the public interests. *Public Utilities Com.* v. *Bethany Telephone Ass'n,* 270 Ill. 183.

We do not agree with the opinion that the Chicago Motor Bus Company was better able to take care of the proposed business on the south side of Chicago than was the Chicago Stage Company. Stated most favorably to appellant, we think from the record it is very doubtful whether the Chicago Motor Bus Company was anything more than a speculative proposition. The evidence of its principal promoters and officers is simply to the effect that they were promoting the scheme and were not intending to run the business after it was established. There is much evidence in the record that the people who were backing the Chicago Stage Company had had theretofore long and successful experience in other large cities with the business here proposed to be carried on on the south side in the city of Chicago. At the most, this record, in our judgment, shows very clearly that the question which of these companies should be granted a certificate to do business in the city of Chicago was peculiarly, under the statute, one that should be submitted to the sound discretion and judgment of the

Public Utilities Commission. In our judgment, on this record their decision cannot be held to be in this case on erroneous legal principles, or that it is contrary to the clear weight of the evidence or that it is based on prejudice. If this court in this case can rightly substitute its judgment in a matter of this kind for the judgment of the Public Utilities Commission, we can hardly conceive of a similar case when the ultimate decision will not rest with the courts instead of the Public Utilities Commission, and under such a holding the courts will be called upon, in most cases heard before the Public Utilities Commission, to substitute the finding of the court for that of the commission. To construe the statute in this case as does the opinion of the court seems to us unconstitutional, as a delegation to the judiciary of non-judicial powers.

In our judgment, also, the opinion is wrong in holding, in effect, that the reasonableness of orders and findings of the commission should be decided by the findings, if any are made, and not by the facts appearing in the record. There can be no question that under section 69 of the Public Utilities act the rules governing proceedings of this kind must be those applicable in chancery cases, and this court has held that where all the evidence is preserved in the record a decree will be sustained upon the facts appearing in such record, irrespective of the findings of the trial court. (*Williams Co.* v. *McCarthy,* 284 Ill. 604; *Pelouze* v. *Slaughter,* 241 id. 215.) The opinion of the court seems, as a matter of fact, to be based upon the expediency or wisdom of the findings of the Public Utilities Commission, and in effect holds that on like testimony this court would not make a similar finding. This is not the correct way to construe a statute of this kind. *Inter-State Commerce Com.* v. *Union Pacific Railroad Co. supra.*