F. F. BYINGTON ET AL., APPELLEES, V. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY ET AL., APPELLANTS.

FILED JULY 11, 1914. No. 18,227.

1. **State Railway Commission: APPEAL: REVIEW.** Appeals from the orders of the state railway commission directly to this court, under section 7, ch. 90, laws 1907, as amended by chapter 94, laws 1911 (Rev. St. 1913, sec. 6132), are to be considered and determined in the same manner as appeals from a judgment of the district court upon trial by jury in civil cases. Such orders will not be reversed unless it affirmatively appears from the record that they are clearly wrong.

2. **Carriers: RATES: EVIDENCE.** Evidence that rates charged by a railroad company for shipments to a particular point are higher than rates charged between the initial points and two other points will not of itself support a finding and order reducing and readjusting the rates. It must be alleged and proved that the rates complained of are unreasonable, unjust, or discriminatory.

APPEAL from the State Railway Commission. *Reversed.*

*Jesse L. Root, Byron Clark* and *Holmes & De Lacy,* for appellants.

*Morning & Ledwith, contra.*

SEDGWICK, J.

These complainants made complaint before the state railway commission against the Chicago, Rock Island & Pacific Railway Company, Morris Transportation Company, Lincoln Traction Company, Chicago, Burlington & Quincy Railroad Company, Union Pacific Railroad Company, Missouri Pacific Railway Company, and the Chi-

cago & Northwestern Railway Company, and asked for an order of the commission "including the village of College View within the switching limits of the city of Lincoln, upon equal terms with University Place and Bethany Heights, and that the car-load rate charged by said Morris Transportation Company be reduced to such reasonable sum as will pay to said company only a fair and reasonable return for the service rendered, and will permit said railroads to absorb the same as a part of the switching charge incurred in switching cars from other roads to College View, and that said roads be required to absorb such switching charges, including that portion which shall go to the Rock Island and Burlington roads, as well as that portion which shall go to the said Morris Transportation Company, and for such other and further and different orders as shall be necessary to correct the conditions herein complained of, and to place College View upon an equality with Bethany Heights and University Place as to rates and switching facilities." The Chicago, Rock Island & Pacific Railway Company and the Chicago, Burlington & Quincy Railroad Company filed separate answers before the commission. Evidence was taken upon the issues joined. The commission made an order granting substantially the relief asked for, and the two answering railroad companies have taken appeals from the order of the commission directly to this court under the provisions of chapter 94, laws 1911; Rev. St. 1913, sec. 6132.

The complaint before the railway commission alleged: (1) That the complainants are residents of College View, and "are each engaged and employed in a business which is unfavorably affected to a substantial degree by the matters and freight rates hereinafter complained of. * * * That said College View is an organized village duly incorporated under the laws of this state, having a population of about 1,500, and is one of the college suburbs of the city of Lincoln, and is immediately adjacent thereto, being connected with the city of Lincoln by two street railway lines which form a part of the street railway sys-

tem of said city of Lincoln, which system is owned and operated by the Lincoln Traction Company, and said village is also connected with the telephone system existing in said city, and the inhabitants talk over said telephone system without any toll charges therefor; that said village also gets all the electric current for lighting said village and for the use of its inhabitants from one of the lighting plants in the city of Lincoln, and the sanitary sewer of said village is connected with the sewer system of said city; that the territory lying between the city of Lincoln and said village is practically all laid out into lots and blocks and suburban residences and is purely urban in character, and that in every sense of the word said village is distinctly a suburb of said city of Lincoln, and the civic life and business interests of said city and said village are intimately connected and interdependent; that in the above mentioned particulars, as well as in point of distance from said city, the relations of said village to said city are substantially similar to those of University Place and Bethany Heights, and in fact said College View is much more closely and intimately connected with said city and sustains a much more distinctly suburban relation to said city than does the village of Bethany, and that there is shipped to said village of College View approximately 400 cars of freight per annum in car-load lots.

"(2)  Complainant alleges that University Place is not upon any line of railroad other than a spur from the Rock Island road which was recently extended to said University Place, and the nearest line of railroad to the village of Bethany is the Missouri Pacific road, which passes near the south boundary line of said village of Bethany at a distance of little over a mile from the business section of said village, said railway maintaining no depot nor station other than a flag station and siding for the accommodation of said village of Bethany at about said distance from said business section, while, on the other hand, both the Chicago, Burlington & Quincy Railroad and the Chicago, Rock

Island & Pacific Railway pass the said village of College View at a distance of a little over a mile from the business section, the said Burlington line being actually within the corporate limits of said village at one point and having two sidings for the setting out of cars at said point, and said Rock Island road passes within a few feet of the west line of the corporate limits of said College View, and has a siding for the setting out of cars at said point, and also a spur which actually extends into the corporate limits of said village and connects with the Lincoln Traction Company's line which enters College View and affords switching facilities by which loaded freight cars from said Rock Island line can be switched and transferred into the very center of the business section of said village and is actually used for that purpose.

"(3)   That the success of the business represented by these complainants, as well as that of all others engaged in business at said village, as well as the upbuilding, growth, and prosperity of said village, depend to a large extent upon the ability of the business interests of said village of College View to be placed upon an equality with other suburbs of said city of Lincoln, and especially with University Place and Bethany Heights, in the matter of freight rates, shipping facilities, and switching privileges and advantages, in order that car-load freight may be shipped to said College View upon the same terms as those afforded said other suburbs, and that, if these rates and privileges be denied to said village, said College View will be illegally and unjustly discriminated against in those particulars, and great and irreparable injury will result to said village, and to the business interests and inhabitants thereof.

"(4)   That prior to the organization of this commission the several railroads involved herein, by an illegal, unfair combination and agreement between them, created a switching district, and established switching limits for said city of Lincoln, which limits included the city of University Place and the village of Bethany Heights, but ex-

cluded the village of College View, and said switching
limits are still unlawfully maintained by said railroads,
to the great damage and injury of said last named village.
That said Missouri Pacific Railway Company has extended
a spur from its road at about Thirtieth and Y streets in
said city of Lincoln, to and connecting with the interurban
electric line operated and maintained by the Omaha, Lin-
coln & Beatrice Railway Company between Lincoln and
Bethany Heights, and by some agreement between said
Omaha, Lincoln & Beatrice Railway Company, and the sev-
eral railroad companies hereinbefore named, the said
loaded cars of freight are transferred and switched from
all of said railroads over said Missouri Pacific Railway
Company's track from the switch-yards in the city of Lin-
coln, over said Missouri Pacific Railway Company's line
and its said spur, and thence over said interurban line to
the business section of said Bethany Heights, and a like
switching service is furnished to the business section of
University Place by transferring loaded freight cars from
all of said railroads to the Rock Island road and moving
the same over said line and its University Place spur into
said business section of University Place, and by means of
this switching district and the agreement maintained be-
tween said several roads and said Omaha, Lincoln &
Beatrice Railway Company, all of said switching is done
without cost to the shippers of freight to University Place,
or the consignees thereof, and the said University Place
and said Bethany Heights are given the benefit of the Lin-
coln freight rates, save in those instances where the regu-
lar freight charges on such cars are less than $15, and the
switching charges which are paid to the Missouri Pacific
Railway Company, the Omaha, Lincoln & Beatrice Railway
Company, and the Chicago, Rock Island & Pacific Railway
Company are paid by the initial carrier or road whose cars
are so switched, and are absorbed by such road in its in-
come or freight revenue account.

"(5) That by reason of the fact that College View is
outside of said switching limits, so unjustly and arbitra-

rily fixed and established by said railroad companies, said village is denied the switching privileges and the Lincoln freight rates over said several railroads which are furnished and accorded to the said city of University Place and said village of Bethany Heights, and it is impossible for said College View and shippers located at that point to ship goods over other railroads than the Burlington and the Rock Island roads and have the same consigned direct to College View, but the same must be consigned to the city of Lincoln and then reassigned over the Burlington or the Rock Island roads from Lincoln to College View, and the shipper is obliged to pay exorbitant and arbitrary local freight tariffs to said Burlington and Rock Island roads from Lincoln to College View on such shipments, in addition to the regular Lincoln freight rates, and even then this merely places cars so rebilled upon the team tracks of said Burlington and Rock Island roads at College View, a distance of a little over one mile from the business section of College View, unless the car is sent from Lincoln over the Rock Island road and transferred over the Rock Island spur or transfer track to the Lincoln Traction Company's line, and thence to the business section of College View, and, if this is done, the shipper is obliged to pay the Morris Transportation Company, lessee of the said traction company's express and freight transportation privileges, another excessive, exorbitant, and in most cases prohibitive rate of $7 per car, and thus College View is discriminated against on all freight shipped in car-load lots over other roads than said Burlington and Rock Island, as compared with the city of Lincoln and said other suburbs, to the extent of the local freight from Lincoln to College View plus the charges of the Morris Transportation Company of $7 per car. That, by reason of the matters aforesaid, College View is practically excluded from territory not adjacent to the Burlington and Rock Island roads in the matter of shipping such freight as lumber, coal, hay, potatoes, apples, sand, brick, cement, and all other similar articles, greatly to the prejudice of said village. Com-

plainants allege that the charge of $7 per car, made by said Morris Transportation Company for each car taken from the Rock Island road over the Lincoln Traction Company's line to the sanitarium in the business section of College View, a distance of a little over one mile, is unreasonable and excessive and is prohibitive, and shippers find it much more economical to haul their freight from said Rock Island road by team rather than have the same brought in over said traction company's line at the rate aforesaid."

The answer of the Chicago, Rock Island & Pacific Railway Company alleges: "That the village of College View, in Lancaster county, Nebraska, is not located upon the line of railroad of the said respondent company, but is distant therefrom a mile and a half; that at a point where the Lincoln Traction Company intersects and crosses this respondent's line of railroad, your respondent maintains a spur that connects with the said traction company's street railway line at a point distant from said village of College View a mile and a half, as aforesaid; that said connection with the traction company's railway was made under and pursuant to a private agreement whereby this respondent was to set cars upon the spur herein referred to, to be disposed of and hauled to the said village of College View by the said traction company under a special and private contract made and entered into by the said traction company and the sanitarium, maintained, owned and operated by the Seventh Day Adventists' Association located in said village." It denied any combination to fix rates or switching district.

The answer of the Chicago, Burlington & Quincy Railroad Company alleges: "That this railroad designates its own switching limits without consultation or consent of any other railroad, except in that part of Lincoln where the possession of the territory is in common, or is parallel to each other, and where the facilities are such that immediate and economical exchange can be made of traffic, and that College View and the complainants herein are not

within any territory so occupied by said railroads, and denies that any combination or agreement has ever been made between this defendant and other railroads in the city of Lincoln with reference to switching which is illegal or unlawful, or discriminates against any person, particularly complainants. This defendant further alleges that the conditions at College View are entirely different from those at University Place and Bethany Heights, in that the latter points of delivery are within the switching limits of Lincoln upon the Chicago, Rock Island & Pacific Railway and the Missouri Pacific Railway. The Rock Island has a station outside of Lincoln limits called University Place, and a spur track which is used for handling car-load freight to and from University Place, which spur track is within the Lincoln switching limit. Bethany Heights is on the Missouri Pacific Railway within the Lincoln switching limit of that line, the switching charge in each case being $5 per car, which the tariffs of this company provide it will absorb with certain restrictions. College View is outside the switching limits of both the Rock Island Railway and this defendant, it being 5.9 miles from Lincoln by the line of this defendant, and no switching rates are published between College View and Lincoln by either line. The rates to College View and Lincoln are the same, and car-load freight only being handled at College View. The switching charge of the Lincoln Traction Company from the Rock Island west to the Nebraska Sanitarium is $7 per car."

In *Hooper Telephone Company v. Nebraska Telephone Company, ante,* p. 245, the practice in case of appeal directly from the railway commission to this court was considered. It was there pointed out that the original act (laws 1907, ch. 90) recognized three different methods of questioning the orders of the railway commission. Subdivision *e,* sec. 5, refers to the proceeding in equity which was allowed in the absence of any statute and prescribes the manner of proceeding in such case. Section 11 of the act provided for proceeding in the district court to en-

force the orders of the commission. This section provided that the court should "proceed to hear and determine the matter speedily as a court of equity * * * in such manner as to do justice in the premises." It contemplated that the court would hear evidence and try the case as ordinary cases in equity. Section 7 provided for appeals by the railway commission, or any person affected thereby, to the district court. It provided that upon the appeal the action "shall be tried and determined as other civil causes in said court." This, of course, contemplated the taking of evidence and full investigation of the whole matter in a court of justice. It also provided that either party might appeal to this court from the judgment of the district court, and that in the trial under this section the burden of proof should rest upon the plaintiff—that is, the party appealing—and that the order of the commission shall "be received in evidence, that said order (made by the commission) is *prima facie* just and reasonable." This section providing for an appeal and trial in the district court was the only section amended by the act of 1911 (laws 1911, ch. 94). By that act section 7 was repealed and a new section enacted in its place. The change made by this amendment was radical. It provided for a review of the proceedings before the commission by proceedings in this court to "reverse, vacate or modify the order complained of." These were the words used in the former statute providing for proceedings in error in this court to review the judgments of the district court in civil actions at law, and the section as amended further provided that the procedure "to obtain such reversal, modification or vacation of any such order or regulation made and adopted, upon which a hearing has been had before said commission, shall be governed by the same provisions now in force with reference to appeals and error proceedings from the district courts to the supreme court of Nebraska." It also provided for superseding the order of the commission until the matter could be reviewed in this court. It takes the place of the former section in the act, and is, of course,

affected by the provision of subdivision *b*, sec. 10 of the
act, which provides that when proceedings are begun af-
fecting the decision of the commission the order of the
commission shall be held in abeyance until finally deter-
mined by the court. In the *Hooper Telephone* case it
was decided that under this amendment appeals from the
orders of the commission directly to this court are to be
considered and determined in the same manner as ap-
peals from judgments of the district court upon trial by
jury in civil cases. It has uniformly been held by this
court that in such cases the judgment of the district court
will not be reversed unless it affirmatively appears from
the record that it is clearly wrong. We have already de-
termined in the case above referred to that when upon
such appeal the record fails to disclose affirmatively that
the order of the commission is clearly wrong, and the or-
der is therefore affirmed by this court, it then becomes a
final order. The Burlington company contends in its brief
that there is no allegation in the record that its "com-
modity or class rates on articles transported by it between
Lincoln and College View are unjust, or excessive," and
that there is no evidence submitted to prove such fact, and
that "by order of the commission every schedule and rate
concerning transportation in car-load lots between Lin-
coln and College View is amended without any reference
having been made thereto in the complaint or in the evi-
dence." The complaint counts principally upon the alle-
gations that there is a discrimination, on the part of the
railroad companies centering in the city of Lincoln, be-
tween the village of College View on the one part and
Bethany Heights and University Place on the other. The
brief of the complainant is wholly devoted to this proposi-
tion that there is an unlawful discrimination, and that Col-
lege View should be placed by the various railroad com-
panies in the Lincoln "switching district." No reference
is made in the brief to any evidence supporting this con-
tention, and no attempt made to assist the court in ascer-
taining whether the facts will justify compelling these va-

96 Neb. 38

rious railroad companies to form a "switching district" which will include the village of College View. The contention of the railroad company that there is no allegation or evidence that their charges upon shipments to College View are excessive or unreasonable is not controverted by the complainants in the brief. Their position seems to be that, without regard to the reasonableness of the charges for the services rendered, each of these defendants should be compelled to reduce its charges to the lowest charge for like shipments through the city of Lincoln to Bethany Heights and University Place.

"A finding that the rates charged by railroads for shipments to a particular point are unreasonable in themselves, and in violation of section 1 of the interstate commerce act (24 Stat. 379; U. S. Comp. St. 1901, p. 3154) cannot properly be based on evidence which only tends to show that they are too high as compared with the rates charged between the initial points and one or two other points." *Interstate Commerce Commission v. Nashville, C. & St. L. R. Co.,* 120 Fed. 934.

"A reduced rate upon a particular commodity cannot be said to be reasonable and just when it is established without regard to whether the existing rate is high or low, as compared with rates on other commodities, and without regard to whether it will pay the cost of the service rendered, or yield a fair return to the carrier upon the capital invested." *Morgan's L. & T. R. & S. S. Co. v. Railroad Commission,* 53 So. 890 (127 La. 636).

"An order of the railroad commissioners that defendant railroad company transfer cars delivered to it by another company, from its station to another point, as a switching service and at switching rates, will not be enforced where such point is beyond the yard limits, and the service rendered is on the main line, and is done under orders, as in case of trains, and not under the direction of the yardmaster." *State v. Chicago, M. & St. P. R. Co.,* 55 N. W. 331 (88 Ia. 445). This last case cited was approved by this court in *State v. Sioux City, O. & W. R. Co.,* 46 Neb.

682, and the Louisiana case was cited with approval in *Chicago, R. I. & P. R. Co. v. Nebraska State Railway Commission,* 85 Neb. 818.

It is conceded that the line of the Rock Island road does not pass through the village of College View. It runs near the corporate limits of the village, and a mile or more from the business part thereof, and the company maintains a side-track at that point upon which it places cars for unloading, upon request. This side-track is connected with the street railway, operated by the Lincoln Traction Company, and it appears that the Morris Transportation Company, through some traffic arrangement with the traction company, transfers cars from this side-track over the line of the traction company, under a contract which it has with a private company in College View, at a fixed charge, as agreed between the College View party and the Morris Transportation Company. It is also conceded that the line of the Burlington company passes through the corporate limits of the village of College View about one and a quarter miles from the business part of the village and maintains two sidings at that point, but has no station or office of any kind at or near the village of College View. These sidings are seven or eight miles from its Lincoln station and from its transfer facilities with other roads. The Rock Island road has a station and side-tracks at University Place, but does not pass through Bethany Heights, and the Missouri Pacific railroad maintains a flag station at Bethany Heights, but not in University Place. It seems clear that under these conditions the fact that the charges for the delivery of intrastate freight in car-load lots through the city of Lincoln to Bethany Heights or University Place are less than charges for the same services over the Rock Island and by way of the traction company's lines to College View, and is less than the same services over the Burlington lines at a distance of seven or eight miles from its station and transfer grounds, is not sufficient of itself to justify the order of the commission.

The findings of the commission show quite in detail the charges on freight in car-load lots to College View as com-

pared with charges from the same initial points to Bethany Heights and University Place. It appears that in some instances there is a considerable difference. The order, as before stated, grants substantially all the relief asked for, and does much more. It adjusts the rates on the several roads affecting College View and provides what they shall be for the future. It changes the contract price to be paid the Morris Transportation Company by the College View Sanitarium under their contract. It requires the Burlington and the Rock Island roads to receive cars from the other roads at the transfer yards in Lincoln and deliver them at the points on those roads nearest to College View, and fixes the charges therefor, and determines many other things not included in the complaint, and, so far as has been suggested or we have observed, not covered by the evidence. It is quite possible that there are existing conditions that ought to be corrected, but we are of opinion that the complaint and the evidence do not justify the order complained of.

The order complained of is therefore reversed and the cause remanded, without prejudice to further proceedings before the commission, if the parties are so advised.

REVERSED.

ROSE, J., not sitting.