Southern Nebraska Power Co. v. Taylor.

---

SOUTHERN NEBRASKA POWER COMPANY, APPELLANT, V. H. G. TAYLOR ET AL., APPELLEES.

FILED FEBRUARY 15, 1923. No. 22238.

1. **Waters:** APPROPRIATION: COMMON LAW RIGHT. Where a riparian owner has appropriated water from a stream for power purposes prior to the time the legislature declared the waters in the streams of the state to be the property of the public, the water-right so acquired by such riparian owner is by virtue of the common law.

2. ——: ——: ——. In such case, the water-power right is not a "franchise" as that word is used in the statute prohibiting the railway commission from granting authority to a public utility corporation to issue stock of the corporation based upon the value of its franchise to be a corporation, or on the value of the right to own, operate, or enjoy any franchise. Comp. St. 1922, sec. 676.

3. ——: ——: VESTED RIGHTS. In such case, a water-power right is a vested property right which may not be taken away or impaired without compensation.

4. ——: ——: ISSUANCE OF STOCK. Where a public utility corporation has succeeded to the water-power right of a riparian owner, and makes application to the state railway commission for authority

to issue stock of the corporation based upon the value of the water-power right, it is proper for the railway commission to make an order granting such authority to the amount the commission finds the value of the water-right to be.

5. ———: ———: ———. In such case, the statute prohibiting the railway commission from granting authority to a public utility corporation to issue stock of the corporation based upon the value of its franchise to be a corporation, or on the value of the right to own, operate, or enjoy any franchise, has no application. Comp. St. 1922, sec. 676.

6. **Evidence** examined, and *held* to sustain the finding of the railway commission and its orders thereon.

APPEAL from the State Railway Commission. *Affirmed.*

*J. H. Agee,* for appellant.

*Clarence A. Davis, Attorney General,* and *Hugh La Master, contra.*

Heard before MORRISSEY, C.J., ROSE, ALDRICH, DAY and GOOD, JJ., TROUP, District Judge.

DAY, J.

The Southern Nebraska Power Company, a public utility corporation, made application to the state railway commission for authority to issue additional stock of the corporation based upon the value of its property. In addition to its physical property the company listed a water-power right, upon which it asked permission to issue stock. At the conclusion of the hearing the railway commission made findings as to the value of the physical property, and also found the value of the water-power right to be $50,000. Upon these findings the railway commission issued an order granting the corporation authority to issue additional stock. From the order of the railway commission the corporation has appealed.

No objection is made by appellant to the action of the commission in fixing the value of the physical property. It contends, however, that the value of the water-power right as found by the commission is entirely too low, and urges that under the evidence the water-power right

should have been fixed at not less than $100,000. The attorney general in behalf of the state, appearing in the case for the first time, has filed a brief in which he contends: First, that appellant's water-power right is a franchise, and that under the provisions of section 676, Comp. St. 1922, the railway commission is prohibited from authorizing the issuance of any stock by a public utility corporation, based on the value of its franchise, and that therefore the railway commission erred in permitting the corporation to issue stock to the amount of $50,000 based on the value of the water-power right; and, second, that, should the court hold that the water-power right was not a franchise, then under the record the railway commission's finding as to the value of the water-power right is correct and amply sustained by the evidence.

Section 676, Comp. St. 1922, provides, in substance, that public utility corporations organized under the law of this state may not issue stock of the corporation without first obtaining authority of the state railway commission. The section further provides: "The commission shall have no power to authorize the capitalization of any franchise to be a corporation, or to authorize the capitalization of any franchise, or the right to own, operate, or enjoy any franchise whatsoever, in excess of the amount (exclusive of any tax or annual charge) actually paid to the state or to a political subdivision thereof as the consideration for the grant of such franchise or right."

It appears that in 1878, and long before the state undertook to regulate or control the use of the waters in the streams of the state, Robert Guthrie conceived the idea of operating a grist-mill by means of water-power obtained from water in the Republican river. A little south and west of the city of Superior the Republican river, flowing from the west, makes a sharp turn to the south, and, returning north, forms what might be termed an "ox-bow." The distance across the bow is about three miles. In consideration of Guthrie's erecting the mill, a

number of property owners donated to him a right of way 100 feet wide for the mill-race. The right of way thus acquired, together with a few purchases, and the use of the bed of a dry creek, to which no objection was made, gave him a strip of land 100 feet wide, extending from the intake of the mill-race to where the tail-race returned the water to the river. Guthrie built a diversion dam in the river, constructed his mill-race and tail-race, erected a mill, and operated it for a number of years. At a later period the rights of Guthrie were acquired by Guthrie Brothers, a corporation, and in 1915 appellant was incorporated and succeeded to the rights of Guthrie Brothers. Still later the appellant acquired by purchase an electric light plant, having a franchise from the city of Superior, and also built a transmission line to a neighboring city. The power used to operate these plants was largely obtained from water taken from the river.

During all the years since its first construction, the water-power from the river has been used, except occasionally when some parts of the equipment were undergoing repair. In recent years the principal use of the water-power has been to generate electrical power for the operation of public utilities.

The appellant having succeeded to the water-power rights of Guthrie, the question is presented whether his water-power rights, in any proper sense, can be said to rest upon a franchise. Generally speaking, a franchise is a grant of a special privilege by public authority, the main element of which is the permission to do something which otherwise the grantee would not have the right to do. Under the facts presented by this record, it does not occur to us that the water-power right acquired by Guthrie was a "franchise" as that word is usually understood. By virtue of the fact of his ownership of the right of way connecting with the river, he was a riparian owner, and, as such, had the right to

divert the water for power purposes. This right was not
bestowed upon him as a 'special privilege by the state
or any of its municipal subdivisions, but was a common-
law right applicable to every riparian owner alike. The
only persons who had a right to complain of Guthrie's use
of the water were other riparian owners whose rights
were thereby infringed upon. Such was the law of the
state before the enactments declaring the water in the
streams of the state to be dedicated to the use of the
people.

In *Kearney Water & Electric Powers Co. v. Alfalfa
Irrigation District*, 97 Neb. 139, the history of our legisla-
tion upon the subject of water-rights is .reviewed at con-
siderable length, and it was held that, prior to the enact-
ment of the irrigation statute (Laws 1889, ch. 68), our
law provided no method of making a claim of ap-
propriation of water except the construction of works to
divert it, and applying the water so diverted to a
beneficial use. It was also held that there was no dis-
tinction between the use of water for irrigation or for
power purposes, and that appropriations which were
completed under the act of 1877 (Laws 1877, p. 168) be-
came vested rights and could not be taken for any pur-
pose without just compensation.

It may not be amiss to say here that the law of 1877
simply gave to corporations operating canals for ir-
rigation purposes the right to acquire a right of way by
condemnation. In *Clark v. Cambridge & Arapahoe Ir-
rigation & Improvement Co.*, 45 Neb. 798, it was held
that the common-law doctrine with respect to the rights
of riparian owners prevails in this state, except as it may
be modified by statute. It was also held that the right
of a riparian owner, as such, is a property right, and,
when vested, cannot be taken away or impaired without
compensation. In *Crawford Co. v. Hathaway*, 67 Neb.
325, it was held that the common-law rule with respect
to the rights of private riparian proprietors has been a

part of the law of this state ever since the organization of the state government.

Whatever may be said of a water-power right acquired since the time the legislature declared the use of water in the streams of the state to be dedicated to the people as being a franchise, a question which seems unnecessary to determine, we are quite clear that, under the facts of this record, the water-power right cannot be considered a franchise. Appellant's water-power right is a valuable property right, and it was proper for the railway commission to authorize the corporation to issue stock based upon its value.

Upon the question of the value of the water-power right there was a wide diversity of opinion among the expert witnesses who testified upon that subject. One of them placed the value at something over $200,000. The testimony of the experts was highly technical, and based upon theories which resulted in a saving by the use of water-power over the use of internal combustion engines. One of the experts, whose valuation was the lowest, advanced certain theories upon which his calculation was based, and which resulted in a valuation of $85,000; but, he further testified: "Realizing that my costs were estimated and more or less theoretical, I concluded by saying that I believed a normal value of the water-right to be $50,000. I say this because I realize that something might happen to the water-plant. The dam might wash out again as it has just done; a great many things might happen which would cause this company to generate its power on the oil basis; and, in view of all those contingencies throughout the years, I have considered the $50,000 more reasonable and conservative than the $85,-000."

From an examination of the expert testimony, we are unable to say it affirmatively appears that the finding and order of the railway commission were clearly wrong.

The rule is now well established that, in direct ap-

peals to this court from orders of the state railway
commission, such orders will not be reversed unless it
affirmatively appears from the record that they are
clearly wrong. *Byington v. Chicago, R. I. & P. R. Co.,*
96 Neb. 584.

To sum up, we conclude that the water-power right of
appellant does not rest upon a franchise; that it was
proper for the railway commission to authorize appellant
to issue stock of the corporation based upon the value of
the water-power right; and that the fixing of the
value of the water-power right at $50,000 is fully sus-
tained by the evidence.

The order of the railway commission is

AFFIRMED.