(No. 19448.—

THE COMMERCE COMMISSION *ex rel.* The National Roadway Lines, Appellant, *vs.* THE WABASH RAILROAD COMPANY *et al.* Appellees.

*Opinion filed June 19, 1929.*

DUNCAN, J., dissenting.

John A. Mayhew, for appellant.

L. E. Stone, for appellee the Nokomis Bus Line, Inc.

Joseph H. Wright, Louis H. Strasser, and E. Bentley Hamilton, for other appellees.

Mr. Justice Dunn delivered the opinion of the court:

On August 1, 1928, the Illinois Commerce Commission granted a certificate of convenience and necessity to the National Roadway Lines, Inc., to operate a system of transportation of passengers, baggage and small parcels by motor busses between Chicago and East St. Louis over State bond issue routes 4, 4A, 51, 44, 25, 10, 2, 16 and 4, through Cicero, Lyons, Justice Park, Argo, Palos Park, Kankakee, Gilman, Onarga, Paxton, Rantoul, Urbana, Champaign, Monticello, Decatur, Pana, Hillsboro, Litchfield, Mt. Olive, Staunton, Edwardsville, Granite City, Madison and Venice, with certain restrictions as to transportation of local traffic between various intermediate points. Petitions for rehearing were filed by the Illinois Traction, Inc., the Pierce-Arrow Motor Coach Company, the Nokomis Bus Line, Inc., the Illinois Central Railroad Company and the Wabash Railroad Company, interested public utilities. The petitions were denied, and appeals were taken by the Illinois Traction, Inc., the Nokomis Bus Line, Inc., the Wabash Railroad Company and the Illinois Central Railroad Company to the circuit court of Macon county, in which the appeals were consolidated by agreement. The circuit court set aside the order, and the National Roadway Lines, Inc., appealed.

The ability of the corporation to furnish adequate and satisfactory service is a question essential to be determined

upon every application for a certificate of convenience and necessity. (*Roy* v. *Commerce Com.* 322 Ill. 452.) The finding of the commission in this respect was, that appellant was a corporation organized under the laws of Illinois as a common carrier for the transportation, by motor busses, of persons and property for hire; that its officers and those interested in the managerial part of its business were men with several years' actual experience in the operation of public utilities engaged in rendering a kind of service similar to that which it proposed to render; that its officers and managers are substantially the same as the officers and managers of the Illinois Roadway Lines, Inc., an Illinois corporation, which for several years has been engaged in the operation of motor busses for the transportation of persons and property for hire between the cities of Chicago and Kankakee, Kankakee and Joliet, Kankakee and Dwight, Kankakee and Danville, Kankakee and the village of Grant Park, between the cities of Chicago Heights and Blue Island, all in Illinois, and for four years had successfully engaged in the operation of motor busses rendering a satisfactory service to the public which in all respects is similar to the service proposed to be rendered by the appellant. The commission found that before entering upon the operation of motor busses as authorized by the order, the appellant be required to file with the commission a sworn statement of its ability to pay all damages which might result from any and all accidents due to the negligent use or operation of each and every motor vehicle operated by it, or file with the commission security, indemnity or a bond guaranteeing the payment by it of all such damages or insuring to a reasonable amount its liability to pay such damages, and the order of the commission was conditioned upon compliance with such requirements. No finding was made by the commission concerning the financial ability of the appellant to perform the service for which it sought authority, and, indeed, there was no evidence, if it

were the province of this court to examine the evidence in the absence of a finding by the commission, upon which a finding could have been made as to the financial ability of appellant to justify the order. The authorized capital of the appellant was only $14,000, which had been paid in. Its assets were $12,000. It will require $150,000 or more to furnish the service authorized by the order. The incorporators and directors are men of good financial standing, the president being worth approximately $500,000, the treasurer approximately $100,000, the secretary approximately $20,000, Emanuel Lassers, a director, approximately $75,000, Nathan Seifer, a director, approximately $500,000, and I. A. Lassers, a director, approximately $1,000,000. The officers and directors are brothers and brothers-in-law, except Robert Scholes, the vice-president. Henry Lassers, the treasurer, testified that if the certificate should be granted the company would increase its capital to perhaps $150,000, and that in case more than $150,000 was necessary he knew the officers or stockholders would be willing to increase the capital stock to whatever amount above $150,000 was necessary. The attorney for the appellant stated, during the progress of the hearing: "Now, we have offered oral proof here of our financial ability. If any one of the objectors here wants contracts as to what the stockholders of this company will put into the company in the event a certificate is granted, we are only too glad to produce these binding contracts." No other evidence was presented on the subject. The contracts were not produced. Whether they were such as could have been enforced by the commission does not appear. Whether the appellant would enforce them in the event its officers and stockholders should change their minds does not appear. The evidence showed, within the jurisdiction of the commission, merely a corporation whose total assets were $12,-000, whom it authorized to perform a service which would require assets of $150,000.

The appellant presented no evidence showing a need of bus service between the cities of Chicago and East St. Louis, yet the order of the commission found that public convenience and necessity required such service. There was evidence on the part of appellees to show that the needs of the traveling public between Chicago and East St. Louis are well supplied. The Illinois Central, the Chicago and Alton and the Wabash are now supplying complete service between the two cities. The only answer made by the appellant is that no service is being maintained between the two cities which follows the route of the authorized bus service. The answer has no connection with the problem. The railroads give quicker service than is in contemplation of the appellant, as shown by its proposed schedule. The route to be followed by its busses is not materially shorter than that of any of the railroads. There is no evidence that the scenery along the proposed route is any more attractive or that there are any more points of especial interest than along another, which might give rise to a tourist demand that does not exist. There are eighteen trains daily in each direction between Chicago and St. Louis, and St. Louis is from a transportation point of view the same as East St. Louis, the distance being negligible and there being street car service between the two at intervals of ten minutes. There are also eleven busses in each direction between the two cities daily. The through traffic between the two cities is well served. The order of the commission was therefore unreasonable in finding that public convenience and necessity required the additional through service.

By the order the appellant was authorized to do a through and local business between Chicago and Kankakee, excepting local business between Chicago and Justice Park. The communities between Justice Park and Kankakee are Palos Park, Orland, Frankfort, Bourbonnais and Bradley. Palos Park and Orland are served by the suburban trains of the Wabash, which operates ten trains a day in such

service on a schedule which resulted from a conference with the various suburban communities in that territory. None of these communities has a direct public method of conveyance to Kankakee, nor do any of the communities which are south of Orland and north of Kankakee have a direct public method of conveyance to Chicago. As to the through service between Chicago and Kankakee, the evidence shows that the Illinois Central railroad operates sixteen trains daily from Chicago to Kankakee and fifteen from Kankakee to Chicago, on such a schedule that one may make the trip practically at his pleasure. The schedule of the appellant offers only three busses a day in each direction.

From Kankakee the route to be followed by the appellant's busses proceeds southwesterly adjacent to and parallel with the Illinois Central railroad to Urbana and Champaign. The territory is also served by the Pierce-Arrow Motor Bus Line Company, operating under a certificate of convenience and necessity permitting it to carry passengers from Chicago to Champaign and from Champaign to Chicago. The order of the commission restricted the appellant from rendering local service between Kankakee, Urbana and Champaign. The Illinois Central now operates seven trains daily between Chicago and Champaign through Kankakee, and there is no hint in the evidence that such service does not meet all demands.

From Champaign to Decatur the proposed route of the appellant extends along the line of the Illinois Traction, Inc., and parallel with it, both serving substantially the same communities. The through traffic between Chicago and Decatur is also served by the Wabash, along the line of which the proposed route of the appellant runs from White Heath, through Bement and Cerro Gordo, to Decatur. The Illinois Central also furnishes direct service to and from Decatur from and to Kankakee and Chicago, and there was no evidence tending to show that the service between Chi-

cago and Decatur, Kankakee and Decatur, and Urbana and Champaign and Decatur, was not sufficient. There was some evidence relating to local transportation conditions in the neighborhood of Decatur, but none to show that there was any demand for the service proposed by the appellant. The Illinois Traction, Inc., alone has eleven cars a day from Champaign to Decatur and a like number in the opposite direction. The appellant offers three busses each way, reaching Decatur from the east at 4:00 A. M., at 2:00 P. M. and at 6:00 P. M. The one due in Decatur at 4:00 A. M. is, of course, of no practical value to local traffic. For such traffic the Illinois Traction, Inc., has a car which starts at Cerro Gordo at 6:10 A. M. and reaches Decatur at 6:55, serving the communities between Cerro Gordo and Decatur. The service of the other two busses is practically a duplication of the service rendered by two of the Illinois Traction, Inc., cars which reach Decatur from the east, respectively, at 1:12 and 2:55 P. M. and another which reaches Decatur at 6:25 P. M. In the opposite direction the three busses leave Decatur at 2:00 A. M., 4:00 P.M. and 12:30 A. M., respectively. The 12:30 bus is of no practical importance for local service, and the same is true of the bus at 2:00 A. M., while two of the cars of the Illinois Traction, Inc., leave Decatur for Champaign, respectively, at 2:45 and 4:40 P. M. The Wabash also has two trains which make stops at Bement and Monticello, two trains which stop at Bement and two trains which make stops at Monticello, all going east from Decatur; and going west, five trains which make stops at Monticello and four which serve Bement, two of which start at Bement, respectively, at 3:43 A. M. and 9:31 A. M. and serve traffic through Decatur to St. Louis. The service offered by the appellant added nothing to the facilities for local transportation between Decatur and Champaign.

Much is said by the appellant of a condition testified to by Frank Halmbacher concerning territory along route 10,

extending about a mile east of the city limits of Decatur and a mile and a half from the city transportation service. In this territory are 1916 people above the age of twelve years. Their community center is Decatur. The line of the Illinois Traction, Inc., borders the territory on the north but is a mile and a half from the most distant part of the territory. The territory is suburban, its population working and trading in Decatur. The bus service, with its three busses a day each way, would be of little benefit to them. Theirs is, in fact, a question of city transportation rather than an incident in a through cross-State service. Frank Godwin testified that what the territory needed was hourly service. There is nothing in the testimony of Halmbacher or in any evidence which was presented to justify the order of the commission in so far as it concerned transportation between Chicago and Decatur and between Champaign and Decatur. With reference to the situation near Decatur, also, (and there is a like local condition near East St. Louis,) it appears that there are men living in communities which may be considered suburban to the larger center of population who work in the larger city. Some of these workmen do not make use of the existing transportation facilities and as a substitute have arrangements whereby one automobile is used to transport a number of them to and from work. Such an arrangement does not show a need for additional public transportation facilities but is merely a form of the use of a private method of transportation as more convenient and better serving their purposes. It has no more tendency to show a public need than the use by an individual of his own automobile.

From Decatur the proposed route of the appellant parallels the Illinois Central railroad to Pana and serves the same territory. The Illinois Central operates three trains daily each way, serving local traffic and through traffic between Pana and Chicago by way of Kankakee, so there is no need for additional through service between those points,

nor between Pana and Chicago through Kankakee, and no evidence was produced that there was any demand for additional local service.

From Pana the proposed route of appellant parallels the Cleveland, Cincinnati, Chicago and St. Louis railway to Hillsboro and Litchfield. The territory is also served by a bus line following the same route from Pana to Hillsboro and by the Illinois Traction, Inc., from Hillsboro to Litchfield. The bus line is operated by the Nokomis Bus Line, and the appellant is restricted by the order of the commission from doing any local business between Pana and Hillsboro and between Hillsboro and Litchfield. From points between Litchfield and Pana there is no direct service to Decatur or Chicago. The evidence does not show that there is any demand for such service of sufficient importance to justify the operation of busses to serve it. There is direct service to St. Louis and intermediate points, and there is evidence of an occasional demand for transportation by automobile. The great weight of the evidence as to this, however, is that the existing facilities meet practically all the demand.

From Litchfield to East St. Louis the proposed route serves the same territory as the Illinois Traction, Inc., whose line it parallels. The Chicago-St. Louis line of the Wabash also rejoins the proposed route at Litchfield, serving St. Louis, Litchfield, Decatur and Chicago. By the order of the commission the appellant is restricted from doing a local business between Hillsboro and Staunton and between Staunton and East St. Louis. The evidence shows that there is no need for any other service than already exists between Hillsboro and intermediate points to East St. Louis. The Illinois Traction, Inc., alone has ten trains daily in each direction between Hillsboro and East St. Louis. Many of the points are also served by the Wabash and Illinois Central railroads.

East St. Louis has direct transportation service to Staunton, Litchfield, Hillsboro, Pana, Decatur, Chicago, and by the Illinois Traction, Inc., to Champaign.

But one other proposition remains in this case upon which reliance is sought to be placed by the appellant. There is some demand for transportation to Champaign because the university is located there, and from some places along the route which is proposed there is no direct public service; also between Pana and Litchfield there is no direct service to Chicago; also between certain points on the proposed route and certain other points on it there is no direct means of public transportation, though each point may be reached from any other by changing from one carrier to another. There was no evidence of any public demand, existing or prospective, for service between any such indirectly connected points as would justify the commission in authorizing a public carrier to establish transportation facilities to serve it. With the exception of the short stretch between Orland and Kankakee, the people who reside along the proposed route have ample service, so far as the evidence even tends to show, both locally and between centers of population. The only result of this order, should it be given effect, would be to weaken existing carriers who already furnish transportation adequate to the demands. It appeared in evidence that existing carriers had heavy investments and were able to furnish such additional service as the commission should find that they should furnish. There was no evidence of any demand for additional transportation facilities for small parcels of freight.

The judgment of the circuit court of Macon county was right and will be affirmed.                    *Judgment affirmed.*