ROY J. FURSTENBERG, APPLICANT, APPELLANT: CITY OF OMAHA, PROPONENT, APPELLANT, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, OBJECTOR, APPELLEE.
272 N. W. 756

FILED APRIL 8, 1937. No. 29841.

*Tunison & Joyner,* for applicant, appellant.

*Seymour L. Smith, Harold C. Linahan* and *W. W. Wenstrand,* for proponent, appellant.

*William H. Wright, Attorney General,* and *Edwin Vail,* for Nebraska State Railway Commission, appellee.

*Kennedy, Holland, De Lacy & Svoboda* and *R. B. Hasselquist,* for Omaha & Council Bluffs Street Railway Company, appellee.

Heard before DAY, PAINE and CARTER, JJ., and TEWELL, CHAPPELL and YEAGER, District Judges.

CHAPPELL, District Judge.

Appellants Roy J. Furstenberg, as applicant, and the city of Omaha, proponent, by precedent approval, applied to the Nebraska state railway commission for a certificate of public convenience and necessity thereby seeking authority for appellant Furstenberg to engage in the common carrier business of transporting passengers for hire by motor busses in Omaha over one definite route upon a definite schedule at a certain price. The application was denied. Motion for new trial was overruled, and both applicant and proponent, hereinafter called appellants, come to this court on appeal.

All parties concede, and the record shows, that the railway commission had jurisdiction to hear the application. Appellants contend that the railway commission erred in

its refusal to hold, over objections of both appellants, that the objector, Omaha & Council Bluffs Street Railway Company, hereinafter called appellee, was barred and estopped from appearing and objecting to the granting of the certificate, and that the denial of the certificate to appellant Furstenberg was erroneous, arbitrary and unreasonable.

With reference to estoppel, earnest contention is made that on November 6, 1928, appellee, having received and unconditionally accepted a nonexclusive franchise from the city of Omaha by vote of its electorate, is estopped to appear and make objection in this proceeding. We have made studious effort to find the proposition contended for by appellants in the cases cited by them and apply it to this proceeding, but have failed. The doctrine of estoppel has application in adversary judicative controversies at law or in equity where one party is prevented from making a claim by reason of his previous conduct to the damage of his opponent. Estoppel must be reciprocal and mutual and is founded upon the idea that the acts of the party estopped must result in injury to the other party and, generally, that it would be a fraud if the right asserted be maintained. See 21 C. J. 1107 and 1139. Estoppel does not itself give a cause of action, its purpose being to preserve rights already acquired and not to create new ones. *State v. Missouri Utilities Co.*, 331 Mo. 337, 53 S. W. (2d) 394. We do not discover its application ordinarily in unilateral legislative or administrative proceedings.

We said in *Publix Cars, Inc., v. Yellow Cab & Baggage Co.*, 130 Neb. 401, 265 N. W. 234: "The grant or denial of a certificate of convenience and necessity by the railway commission requires the exercise of administrative and legislative functions and not of judicial powers." In *Gallaher v. City of Lincoln*, 63 Neb. 339, 88 N. W. 505, it was held that the city, acting in a ministerial and not in a judicial capacity, could not avail itself of the defense of estoppel in an action to enforce a contract contrary to an express statute. The rule generally is that admissions, in order to constitute estoppel, must relate to matters of fact

and not of law. 21 C. J. 1147. The doctrine of estoppel will not ordinarily apply to a private individual when the public interest is concerned, and one private individual cannot be given an advantage over another by claiming an estoppel against the public. 21 C. J. 1189.

We must not permit a confusion between the jurisdiction of the city and the railway commission. There is a clear distinction between powers of a city to grant or withhold franchises, licenses or permits to use its streets, police power, and the exclusive constitutional power of the railway commission to impose regulation and control over the city's common carriers. *In re Yellow Cab & Baggage Co.*, 126 Neb. 138, 253 N. W. 80. Appellants recognize these two different forces of jurisdiction by admitting and contending that such permit already obtained is insufficient to authorize common carrier service in that a certificate of convenience and necessity from the railway commission is also required. These two precedent authorizations arise from two different jurisdictional authorities, and that both are necessary is not questioned.

Appellee's franchise recognizes these separate powers. Section 2, subsec. 32 thereof, with reference to regulation, provides that such authority should be exercised by the city if the railway commission should relinquish it, or should it be held by the supreme court not to possess it. We have said that the railway commission has jurisdiction over Omaha common carriers even though contrary provisions are contained in its city charter. *Omaha & C. B. Street R. Co. v. Nebraska State Railway Commission*, 103 Neb. 695, 173 N. W. 690. We reaffirmed this position in 1934 after the grant of appellee's franchise. *Omaha & C. B. Street R. Co. v. City of Omaha*, 125 Neb. 825, 252 N. W. 407. The authority of the railway commission to require common carriers in Omaha to obtain from it certificates of convenience and necessity was later established. *In re Yellow Cab & Baggage Co., supra; Publix Cars, Inc., v. Yellow Cab & Baggage Co., supra.*

This court has expressly held that the jurisdiction of the

railway commission cannot be avoided by the affirmative contractual provisions of a franchise. Such contracts are made subject to the right of the railway commission's jurisdictional regulation. *Marquis v. Polk County Telephone Co.*, 100 Neb. 140, 158 N. W. 927; *McCook Irrigation & Water Power Co. v. Burtless*, 98 Neb. 141, 152 N. W. 334. Public service corporations in each instance sought and obtained relief before the railway commission from low rates specifically imposed by their own franchises or contractual obligations without estoppel. In other cases they appear as objectors and have been granted or denied relief despite their own contractual obligations. The analogy is that not any understanding, implication, or express agreement by franchise between a municipality and a public service company, seeking to disrobe the paramount power of the railway commission, can have any legal force in this state. To assume that such a municipality, as a condition of favorably exercising its veto power with reference to the entry into its jurisdiction of a common carrier, could, by franchise, divest a constitutionally created regulatory body, such as the railway commission, of its jurisdiction is without logic. Appellee is not estopped by its franchise from invoking affirmative or negative action in this proceeding because to that extent the jurisdiction of the railway commission would be divested and its power to serve the people destroyed. See *Milwaukee Electric Ry. & Light Co. v. Railroad Commission*, 238 U. S. 174; *Railroad Commission v. Los Angeles Ry. Corporation*, 280 U. S. 145; *City of Englewood v. Denver & South Platte Ry. Co.*, 248 U. S. 294; *Southwest Mo. R. Co. v. Public Service Commission*, 281 Mo. 52, 219 S. W. 380; *State v. Missouri Utilities Co.*, supra; *City of Cape Girardeau v. St. Louis-San Francisco Ry. Co.*, 305 Mo. 590, 267 S. W. 601; *City of St. Louis v. Public Service Commission*, 276 Mo. 509, 207 S. W. 799; *City of Milwaukee v. Railroad Commission*, 206 Wis. 339, 240 N. W. 165; 3 Ponds, Public Utilities (4th ed.) sec. 826. The converse of these propositions we have been unable to find, and appellants have not found them for us.

It is suggested that section 18, art. III of the Constitution, inhibiting exclusive franchises, would be violated by an act of the Nebraska state railway commission in denying a certificate of convenience and necessity to a second common carrier in the city of Omaha; in other words, that such denial would make the nonexclusive franchise of appellee exclusive in its effect. True logic cannot so array the fact. The railway commission is thereby simply exercising the discretion reposed in it by section 20, art. IV of the Constitution, wherein it was given plenary jurisdiction over the rates, service and regulation of common carriers. The jurisdiction to grant franchises in the city of Omaha was constitutionally reposed in the city under section 2, art. XII of the Constitution, and nothing precludes the city from granting further street railway or bus franchises at its pleasure. This being true, appellee's franchise is not and never can be an exclusive franchise. We find that no conflict is assumed or recognized to obtain in the general inhibition to original grants of exclusive franchises and what appellants visualize as a practical status of exclusive franchises brought about by the regulatory bodies preferring to evolve adequate service out of the activities of one public service company duly regulated rather than out of two or more competing public service companies. This is true because the railway commission, whenever it finds that the single public service is not giving, and will not give, adequate service, can grant certificates of convenience and necessity to one or more additional competing companies.

Resolution No. 137 of the Nebraska railway commission, the legislative instrument under and by which this appellant makes application for certificate of convenience and necessity, provides: "While the old adage 'Competition is the life of trade' may still be acceptable as applied in private industry, still today it is the general concensus of opinion of both the courts and regulatory bodies that unbridled competition between such public utilities is not only harmful to the industries themselves but also in the

end generally inures to the detriment of the general public as well." Appellants and the railway commission thereby brought this objector, appellee, a prospective competitor public utility, into this proceeding. *Re Borough of Brookville, P. U. R.* 1929 D, 483; *Egyptian Transportation System v. Louisville & N. R. Co.,* 321 Ill. 580, 152 N. E. 510; *Chicago Rys. Co. v. Commerce Commission,* 336 Ill. 51, 167 N. E. 840; *State v. Department of Public Works,* 119 Wash. 381, 206 Pac. 21.

In *City of Campbell v. Arkansas-Missouri Power Co.,* 55 Fed. (2d) 560, after citing many cases, the court said: "A franchise is property, and, as such, is under the protection of the law, and without express words it is exclusive as against all persons acting without legal sanction. True, plaintiff's franchise was not exclusive in the sense that the city might not grant similar right to another, yet it was exclusive against any one who assumed to exercise the privilege granted the plaintiff, in the absence of authority or in defiance of law." We hold that the appellee had a legal right, enjoying an admittedly nonexclusive franchise, to legally object before the railway commission to any one else invading its field unlawfully. Appellants' contentions of estoppel are not available.

Section 75-505, Comp. St. 1929, provides for an appeal to this court from a decision of the railway commission with reference to any order or regulation made or adopted by it upon which there has been a hearing. This court under its previous holdings has jurisdiction on appeal to review its orders and regulations. However, appellants confuse the administrative, legislative, and judicial field of action. In adopting the constitutional provision creating the state railway commission, it was made an independent part of the Constitution and not as an amendment to the executive, legislative, or judicial articles thereof. *In re Lincoln Traction Co.,* 103 Neb. 229, 171 N. W. 192. In 1907 the legislature adopted an act defining its powers and duties and provided generally the authority that the railway commission may exercise over common carriers. Both by

the Constitution and statute the railway commission is given full power to regulate and control them. The railway commission is thereby clothed with administrative, legislative, and judicial powers. No specific legislation has limited or affected this power, and the people have given the railway commission all the control over common carriers that they themselves could exercise. *In re Lincoln Traction Co., supra.* We have said that such powers thus possessed by the railway commission are to be liberally construed. *In re Yellow Cab & Baggage Co., supra.*

The grant or denial of a certificate of convenience and necessity is the exercise of an administrative or legislative power as distinguished from judicial power. On an appeal to the supreme court from an order of the railway commission administrative or legislative in nature, the only questions to be determined are whether the railway commission acted within the scope of its authority and if the order complained of is reasonable and not arbitrarily made. Where the action of the railway commission is not unreasonable or arbitrary and does not exceed its powers or violate a rule of law, this court will not interfere with its findings of fact for the reason that they involve administrative and legislative rather than judicial questions. *In re Yellow Cab & Baggage Co., supra; Publix Cars, Inc., v. Yellow Cab & Baggage Co., supra.* See, also, *Hooper Telephone Co. v. Nebraska Telephone Co.,* 96 Neb. 245, 147 N. W. 674; *Byington v. Chicago, R. I. & P. R. Co.,* 96 Neb. 584, 148 N. W. 520; *Rawlings v. Chicago, B. & Q. R. Co.,* 109 Neb. 167, 190 N. W. 569; *Southern Nebraska Power Co. v. Taylor,* 109 Neb. 683, 192 N. W. 317; *Farmers & Merchants Telephone Co. v. Orleans Community Club,* 116 Neb. 633, 218 N. W. 583; *Omaha & C. B. Street R. Co. v. City of Omaha, supra; Omaha & C. B. Street R. Co. v. Nebraska State Railway Commission, supra.*

The facilities of administrative law with the combination of administrative, legislative, and judicial powers such as the railway commission have been developed by the people of this state and in the country generally for the purpose

of providing direct, swiftly-moving, effective, nonpolitical protection of the public. The primary object of the regulation of public utilities by the railway commission is not to establish a monopoly or to guarantee the security of investment in public service corporations, but, first and at all times, to serve the interests of the public. Nothing is more injurious to the public from every standpoint than a law which is not capable of working out tangible results. Therefore, in its administrative and legislative sphere, if the railway commission acts within the law and not arbitrarily, the courts should not, under the guise of judicial action, interfere and thereby unlawfully usurp administrative and legislative powers constitutionally reposed elsewhere. Courts should review or interfere with administrative and legislative action of the railway commission only so far as is necessary to keep it within its jurisdiction and protect legal and constitutional rights. The policy or wisdom of its action in this field ordinarily cannot be reviewed by the courts except where unlawfully exercised. This court has no power to regulate public utilities. That power is constitutionally vested in the legislature and the railway commission. "The Constitution is still recognized as the supreme law of the state and as a limitation of power of all departments and all officials." *Laverty v. Cochran, ante,* p. 118, 271 N. W. 354. See Const. art. II, sec. 1. This court has no business in the field of making legislation, and it is not an administrative body. Powers conferred upon an appellate court should be construed as intended to include only powers consistent with the discharge of its inherent judicial functions. The intended effective control of public utilities by the railway commission is dependent upon this attitude of the court in that field. 3 Pond, Public Utilities (4th ed.) secs. 913, 915, 919, 920, 932, 937, 938, 939, and 940; 42 C. J. 691, 692; 80 Uni. of Pa. Law Rev. 312; 31 Mich. Law Rev. 582; 36 Yale Law Jr. 190; *Aetna Ins. Co. v. Commonwealth,* 160 Va. 698, 169 S. E. 859; *Wabash, C. & W. R. Co. v. Commerce Commission,* 309 Ill. 412, 141 N. E. 212; *In re Samoset Co.,* 125 Me. 141, 131 Atl. 692; *In re*

*Application of Consolidated Freight Co.,* 265 Mich. 340, 251 N. W. 431; *United Fuel Gas Co. v. Public Service Commission,* 73 W. Va. 571, 80 S. E. 931; *Niagara Falls Power Co. v. Water Power & Control Commission,* 267 N. Y. 265, 196 N. E. 51; *Procter & Gamble Co. v. United States,* 225 U. S. 282; *Interstate Commerce Commission v. Illinois Central R. Co.,* 215 U. S. 452; *Vander Werf v. Board of Railroad Commissioners,* 58 S. Dak. 586, 237 N. W. 909; *State v. Public Service Commission,* 330 Mo. 1, 49 S. W. (2d) 614; *Fornarotto v. Board of Public Utility Commissioners,* 105 N. J. Law, 28, 143 Atl. 450; *Sohngen v. Public Utilities Commission,* 115 Ohio St. 449, 154 N. E. 734; *York Motor Express Co. v. Public Service Commission,* 111 Pa. Super. Ct. 169, 169 Atl. 396; *Buckeye Stages v. Public Utilities Commission,* 117 Ohio St. 540, 159 N. E. 561; *Matter of Public Service Interstate Transportation Co. v. Public Service Commission,* 258 N. Y. 455, 180 N. E. 170; *Shupee v. Railroad Commission,* 123 Tex. 521, 73 S. W. (2d) 505; *Day v. Public Service Commission,* 107 Pa. Super. Ct. 461, 164 Atl. 65; *Union Cooperative Telephone Co. v. Public Service Commission,* 206 Wis. 160, 239 N. W. 409; *Modeste v. Public Utilities Commission,* 97 Conn. 453, 117 Atl. 494; *Lake Shore Electric Ry. Co. v. Public Utilities Commission,* 119 Ohio St. 61, 162 N. E. 279; *In re Stolting,* 131 Wash. 392, 230 Pac. 405; *Moffat Tunnel Improvement District v. Denver & S. L. Ry. Co.,* 45 Fed. (2d) 715; *O'Keefe v. Chicago Rys. Co.,* 354 Ill. 645, 188 N. E. 815; *State v. Public Service Commission,* 63 S. W. (2d) (Mo.) 26; *Texas Motor Coaches v. Railroad Commission,* 59 S. W. (2d) (Tex. Civ. App.) 923; *State v. Public Service Commission,* 324 Mo. 270, 23 S. W. (2d) 115; *Decker v. City of Wichita,* 109 Kan. 796, 202 Pac. 89; *White Transit Co. v. Public Service Commission,* 108 Pa. Super. Ct. 490, 165 Atl. 523; *Gongaware v. Public Service Commission,* 83 Pa. Super. Ct. 269.

The railway commission conducted an extended hearing on this application. We have read the record with great care. Many witnesses were called and a great volume of

evidence was adduced, most of it for appellee, and many other objectors, including Omaha business men, contiguous residents and users of appellee's transportation system; persons interested in a then-proposed franchise election in Omaha to establish separate motor bus transportation, and traffic experts from Omaha, Des Moines, Kansas City and elsewhere. Only appellant Furstenberg and one city commissioner, not a patron of appellee, testified for him. The permit granted by the city to Furstenberg in the first instance was by a divided vote of its council 4 to 3.

The evidence, which we deem it not necessary to quote at length, supports the order of the railway commission; therefore, it is reasonable and not arbitrarily made. Appellant Furstenberg, a man of little experience in this field which he abandoned when unprofitable, made application for a certificate of convenience and necessity to use motor bus transportation over one definite route through the best-paying, congested district of the city almost parallel with the routes of appellee, crossing its system many times, and at a rate slightly lower, except for individual single fares, than now set by the railway commission for appellee. He is not bound thereby to give continuous adequate service upon any route. In other words, the railway commission is asked to put its approval upon an experiment at the expense of that which is permanent. Appellee has a long-established, city-wide transportation system with great investment. It is heavily in debt, just emerging from an unprecedented depression of everything except individual automobile ownership and transportation. It operates under a franchise requiring continuous adequate service to every part of the city whether profitable or not. Its entire system has recently been rerouted by experts with the approval and assistance of the city. Extensive improvements were then immediately made. One-third of appellee's present mileage is now served by motor bus transportation. There is no evidence of inadequate service. There is some evidence that part of appellee's present equipment is not up-to-date; that such equipment is not modern or the latest model, which

changes frequently. Traffic experts testified that there are now three methods of municipal transportation—the electric rail car, the rubber-tired trackless trolley, and the motor coach. The expected development of the Diesel engine, electricity by high-frequency current or other mechanical perfection, may suddenly destroy the modernity of all of them.

Under these circumstances no common carrier in a city the size of Omaha could maintain a semblance of economic stability if it attempted to maintain the latest transportation equipment in its entirety. The effect of granting a certificate of convenience and necessity in this proceeding would be to install competition hazardous to appellee's investment and the public with no assurance of other better continuous adequate city-wide transportation for the people of the city of Omaha in the future. Appellee offers to furnish and makes claim that it is able to meet any reasonable order of the railway commission with reference to new motor bus or other transportation requirements. Since it has been called to our attention by brief of counsel and argument to this court, we take judicial notice that, shortly after this proceeding was concluded by the railway commission, the people of the city of Omaha voted on the question of whether they should grant a separate franchise to other parties for the purpose of establishing exclusive motor bus transportation in Omaha, and overwhelmingly defeated it.

Justice Brandeis, in speaking of the necessity for regulation of public utilities or business affected with the public interest and certificates of convenience and necessity therefor, expressed the modern view in a dissenting opinion in *New State Ice Co. v. Liebmann,* 285 U. S. 262, when he said: "The purpose of requiring it is to promote the public interest by preventing waste. Particularly in those businesses in which interest and depreciation charges on plant constitute a large element in the cost of production, experience has taught that the financial burdens incident to unnecessary duplication of facilities are likely to bring high rates and poor service. There, cost is usually dependent, among other things, upon volume; and division of possible patron-

age among competing concerns may so raise the unit cost of operation as to make it impossible to provide adequate service at reasonable rates. The introduction in the United States of the certificate of public convenience and necessity marked the growing conviction that under certain circumstances free competition might be harmful to the community and that, when it was so, absolute freedom to enter the business of one's choice should be denied." As to common carriers, this is the very foundation and the only reason ever given for the requirement of certificates of convenience and necessity. In considering an application for a certificate of convenience and necessity for the operation of motor bus transportation, the public, and not individuals, is to be most considered. Every jurisdiction requiring certificates of convenience and necessity supports this theory, and we adopted it in *In re Yellow Cab & Baggage Co., supra,* and *Publix Cars, Inc., v. Yellow Cab & Baggage Co., supra.* See, also, 3 Pond, Public Utilities (4th ed.) secs. 775, 913; 36 Yale Law Jr. 163; *Chicago Rys. Co. v. Commerce Commission, supra; State v. Public Service Commission,* 327 Mo. 249, 37 S. W. (2d) 576; *Cincinnati Traction Co. v. Public Utilities Commission,* 112 Ohio. St. 699, 148 N. E. 921; *People's Transit Co. v. Henshaw,* 20 Fed. (2d) 87; *Consolidated Coach Corporation v. Kentucky River Coach Co.,* 249 Ky. 65, 60 S. W. (2d) 127; *Hoffman v. Public Service Commission,* 99 Pa. Super. Ct. 417; *Fornarotto v. Board of Public Utility Commissioners, supra; Vander Werf v. Board of Railroad Commissioners, supra; Red Star Transportation Co. v. Red Dot Coach Lines,* 220 Ky. 424, 295 S. W. 419; *West Suburban Transportation Co. v. Chicago & W. T. R. Co.,* 309 Ill. 87, 140 N. E. 56; *Abbott v. Public Utilities Commission,* 48 R. I. 196, 136 Atl. 490; *Monongahela West Penn Public Service Co. v. State Road Commission,* 104 W. Va. 183, 139 S. E. 744.

The railway commission, having this theory in mind and remembering its duty to protect the public, reasonably decided that, if adequate service was being rendered by an existing common carrier passenger agency which is willing

and able to comply with any reasonable order with reference to new motor bus or other transportation requirements, a certificate of convenience and necessity should not be issued for applicant's competitive service. See *Publix Cars, Inc., v. Yellow Cab & Baggage Co., supra;* 42 C. J. 687, 688; *Illinois Commerce Commission v. Wabash R. Co.,* 335 Ill. 484, 167 N. E. 64; *Chicago, B. & Q. R. Co. v. Commerce Commission,* 345 Ill. 576, 178 N. E. 157; *East End Traction Co. v. Public Utilities Commission,* 115 Ohio St. 119, 152 N. E. 20; *McLain v. Public Utilities Commission,* 110 Ohio St. 1, 143 N. E. 381; *North Coast Transportation Co. v. Department of Public Works,* 157 Wash. 79, 288 Pac. 245; *Sohngen v. Public Utilities Commission, supra; White Transit Co. v. Public Service Commission, supra; Cardinal Bus Lines v. Consolidated Coach Corporation,* 254 Ky. 586, 72 S. W. (2d) 7; *Cannonball Transit Co. v. Sparks Bros. Bus Co.,* 255 Ky. 121, 72 S. W. (2d) 1021; *Chicago, R. I. & P. R. Co. v. State,* 123 Okla. 190, 252 Pac. 849; *Trescot Transfer Co. v. Sawyer,* 138 S. Car. 337, 136 S. E. 481; *Pottsville Union Traction Co. v. Public Service Commission,* 67 Pa. Super. Ct. 304; *Andrews v. Public Service Commission,* 88 Pa. Super. Ct. 306; *Chicago Rys. Co. v. Commerce Commission, supra; Egyptian Transportation System v. Louisville & N. R. Co., supra; Monongahela West Penn Public Service Co. v. State Road Commission, supra; Vander Werf v. Board of Railroad Commissioners, supra; Fornarotto v. Board of Public Utility Commissioners, supra; State v. Department of Public Works,* 141 Wash. 168, 250 Pac. 1088; *Stark Electric R. Co. v. Public Utilities Commission,* 118 Ohio St. 405, 161 N. E. 208; *State v. Public Service Commission,* 329 Mo. 1139, 49 S. W. (2d) 619; Ann. 67 A. L. R. 957.

This opinion is not conclusive except as to legal questions presented and does not foreclose the question of whether or not the people of the city of Omaha shall have new or added motor bus transportation or other modern transportation facilities. The railway commission, upon proper application made to it, the evidence and law per-

mitting, may grant a certificate of convenience and necessity to others and thereby establish such facilities, or may require appellee herein to furnish the same.

The record disclosing competent and relevant evidence in support of the findings of the railway commission upon the questions of fact presented, and no violation of any rule of law or constitutional right appearing, this court will not substitute its judgment for that of the railway commission, and its order is

AFFIRMED.