TOWN OF ANDOVER'S APPEAL FROM PUBLIC UTILITIES COMMISSION.

First Judicial District, Hartford, May Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued May 5th—decided July 14th, 1931.

*Samuel B. Harvey,* for the appellant.

*H. Rogers Jones,* Assistant Attorney-General, with whom was *Ernest L. Averill,* Deputy Attorney-General, and, on the brief, *Warren B. Burrows,* Attorney-General, for the appellees.

AVERY, J.   The plaintiff town of Andover took this appeal from an order or final decision of the public utilities commission filed March 20th, 1930; and, as reasons of appeal, alleged generally that the decision was unjust, unreasonable, inexpedient, illegal, and against public policy; and was rendered by the commission arbitrarily and without authority of law.   Attached to the appeal, and made a part thereof as exhibits, are the orders and proceedings of the commission in respect of the matter.   These set forth in great detail the various steps taken, together with a statement of the evidence at the various hearings, and the reasons for the decisions made in each instance.   It appears that June 2d, 1926, John A. MacDonald, as state

highway commissioner, acting pursuant to the provisions of Chapter 266 of the Public Acts of 1925, filed with the public utilities commission a petition alleging that a dangerous condition existed upon the trunkline highway between Hartford and Willimantic, at a grade-crossing just west of the station of the New York, New Haven and Hartford Railroad Company, at Andover; and that the state highway department had prepared a tentative plan, specifications and estimate of the cost of removing the same, which was filed as part of the petition; and the highway commissioner asked authority of the utilities commission to eliminate the dangerous condition at the crossing. After due notice to the parties in interest, the matter came on for a hearing and, July 9th, 1926, the commission filed its decision. We refer to such parts of it as are of especial interest on this appeal. The crossing sought to be eliminated is located in the town of Andover, approximately three hundred feet northwest of the railroad station, and is on the trunkline highway connecting Hartford with Willimantic and eastern Connecticut. Approached from the west, the highway turns southeasterly just before the point of crossing, and, on an ascending grade, crosses the railroad tracks; thence runs easterly and northeasterly, through a narrow pass under the railroad about thirteen hundred and fifty feet east of the crossing, measured along the railroad and about sixteen hundred feet along the highway. The highway commissioner proposed to relocate the trunkline highway on the northerly side of the railroad, for a distance of about twenty-two hundred feet, commencing at a point approximately three hundred and twenty feet northwest of the crossing, and connecting with the present highway about six hundred feet east of the underpass, thereby eliminating the crossing itself, and diverting

through travel from the underpass which was regarded as dangerous. The commissioner further proposed to close the highway at the crossing within the railroad company's right of way, and to connect that part of the highway south of the track with the new trunk-line highway about three hundred feet northeast of the underpass. A freight station is located on the north side of the track with the only public entrance thereto northerly of, and close to, the crossing. A large volume of highway traffic passes over the crossing, which is protected by distant warning signs and by flashlight signals. Andover is bisected by the railroad and the proposed plan of elimination would require that residents of the town, desiring to go from the northern to the southern part, traverse the new highway location easterly to a short new road, connecting the relocated highway with the old one, and thence in a reverse direction to the business center, a total distance of about thirty-five hundred feet, and vice versa, contrasting with a present distance of about five hundred feet of connecting highway over the crossing.

At the hearing before the commission, testimony was presented that execution of the proposed plan of elimination would seriously affect the economic, social and religious life of the town; the residents would be subjected to inconvenience in going from one part to the other, and the safety of school children endangered by requiring them to walk along the highway and through the underpass or be transported in buses.

The state highway commissioner desired the crossing eliminated as part of the highway improvement because he regarded the ascending grade approaching the crossing of the old highway as a dangerous condition. His plan, however, provided that the old high-

way, on the north side, be left open up to the point of crossing, continuing the existing entrance and exit to the sidetracks and freight station.

From the evidence presented, the utilities commission found that while a dangerous condition existed at the crossing, the degree of danger was not such as to warrant its elimination on the plan proposed, especially as the proposed trunkline highway could be constructed without abolishing the local crossing, and the petition was denied.

Thereafter, December 3d, 1929, on receipt of petitions by residents of Andover and vicinity requesting the reopening of the case for further hearing and for the presentation of additional testimony, the commission reopened the case, and thereafter, December 23d, 1929, a further hearing was had. The finding of the commission recites that, from the testimony, it then appeared that the construction of a pedestrian underpass at or in the vicinity of the present crossing would remove most of the local opposition and afford a convenient avenue for pedestrian travel; and that the limited local vehicular travel could well afford to go the somewhat longer distance through the present highway underpass for the benefit derived by the elimination of the crossing and the dangers incident thereto; and further, that while a vote in a town meeting, held prior to the rehearing, indicated strong opposition to the elimination of the crossing, such vote was taken without consideration of the pedestrian underpass, and the oral testimony presented in connection with the construction of the underpass materially modified the force of the vote. It was also found that while the number of trains moving over the crossing was substantially the same at the time of the second hearing as at the time of the original hearing, the number stopping at the Andover station had been decreased, re-

sulting in a higher speed over the crossing, thereby adding to the danger. After consideration of the record and the evidence, the commission made a decision, rescinding that of July 9th, 1926, and finding that a dangerous condition existed at the crossing, and ordered that the condition be eliminated by the state highway commissioner and the New York, New Haven and Hartford Railroad Company in the manner shown on the plans of the highway commissioner, which were approved; and, in addition, it was ordered that a pedestrian underpass be constructed in the vicinity of the crossing upon such a plan or plans as might be approved by the utilities commission. The matter was adjourned until February 17th to allow the railroad company and the highway commissioner to prepare and submit plans for the construction of the underpass.

At the hearing, February 17th, 1930, in regard to the underpass and the apportionment of the expense thereof, several residents of the town discussed the proposed plan of elimination approved by the commission in its finding, dated January 31st, 1930, for the purpose of securing either a new plan of elimination, or rejection by the commission of the approved plan, and leaving the situation of the town, with respect to the grade-crossing, as it was, namely, without any elimination thereof at all. The commission ruled that its finding dated January 31st, 1930, should stand; and it appearing again, as it did at the former hearing, that the plan approved represented the only feasible and satisfactory method of elimination laid before the commission for this construction by any of the interested parties, and that other plans of elimination had been considered by the highway commissioner and dismissed as being unsatisfactory, the commission ruled that the

plan of elimination which had been approved should not be rejected.

At the hearing of December 23d, 1929, the cost of constructing a pedestrian underpass was tentatively estimated to be about $3000; but, at the hearing of February 17th, 1930, the railroad company presented plans for the construction of the underpass at an estimated cost of $13,000. The increase in the estimated cost was due not only to greater accuracy of the study of the cost involved, but also to finding that the terrain and grades involved rendered the construction more difficult than expected. The underpass would accommodate almost exclusively residents of the town; and, under such circumstances, ordinarily would be regarded by the commission as a part of the elimination cost to be borne by the town. The town expressed its unwillingness to pay the cost involved; moreover, some of the residents expressed doubt that any substantial need existed for a pedestrian underpass on account of the more or less limited use of the present crossing for pedestrian travel. Under these circumstances, the commission ruled that the scheme of elimination would be changed so as not to include a pedestrian underpass; and that, if and when future conditions required the construction of an underpass, the order of elimination would be modified or amended to include such, and the apportionment of the cost thereof determined at that time.

Upon the evidence presented at the hearing and the claims of the parties, the commission ordered that the cost of removing the crossing be apportioned fifty-five per cent upon the State and forty-five per cent upon the railroad company. No part of the expense was imposed upon the town of Andover.

The appeal and reasons of appeal filed on behalf of the town of Andover were demurred to, on various

grounds, by the Attorney-General, acting for the public utilities commission, and the demurrer was sustained by the court on two grounds; first, that the railroad company, a necessary and essential party to the appeal, was not made a party; and, second, that the appeal presented no judicial question, and that the order of the commission in the premises was purely an administrative matter in the exercise of the functions conferred upon the commission by the legislature, and there was nothing in the proceedings showing that the commission had acted illegally or arbitrarily, or had transcended its power.

Thereafter, the town of Andover filed an amendment to its reasons of appeal, setting forth: First, that the decision of the public utilities commission is invalid because made upon the application of parties other than a public service company, a municipality or the highway commissioner; second, that the decision requires the termination of the Andover main street at the present railway crossing, and does not provide for the removal or relocation of the highway; third, that the building of the new portion of highway as ordered by the commission is not dependent upon or in any way connected with the elimination of the crossing; and fourth, that the decision is unreasonable, inexpedient and against public policy in that it will "reduce the main street of the village . . . permanently to a street closed at one end and will divide said village into two parts wholly without convenient method of communication by footmen and vehicles and substitute for the crossing eliminated a much more dangerous crossing."

These amended reasons of appeal were demurred to on various grounds by the Attorney-General, but the substance of the demurrer can be stated in two propositions: first, that it appeared from the proceedings

that the original application was brought by the highway commissioner pursuant to Chapter 266 of the Public Acts of 1925, and that the commission had power to reopen at any time, on proper notice, any decision made by it; second, that the other grounds of demurrer presented on the record involved no more than a question of administrative judgment, and raised no question which the courts could review. This demurrer was sustained "on the grounds therein stated." The appeal to this court is from the rulings on these demurrers.

"Where the action of an administrative body involves only a purely administrative matter, the court, on a statutory appeal from such body, has before it only the question, if properly raised, whether the body acted illegally or has exceeded or abused its powers; otherwise the action of an administrative body involving only an administrative matter, is to be accepted as final." *Modeste* v. *Public Utilities Commission,* 97 Conn. 453, 459, 117 Atl. 494; *Norwalk* v. *Connecticut Co.,* 88 Conn. 471, 478, 91 Atl. 442; *Spencer's Appeal,* 78 Conn. 301, 308, 61 Atl. 1010; *DeFlumeri* v. *Sunderland,* 109 Conn. 583, 585, 145 Atl. 48; *Holly* v. *Sunderland,* 110 Conn. 80, 82, 147 Atl. 300. It is not for the court to substitute its judgment for that of the commission and it could not sustain an appeal merely because it might conclude that the action of the commission produced an unreasonable and inexpedient result or was not good policy in view of all the circumstances, or produced a situation in fact more dangerous than the one for which it was substituted. Only if the court reached the conclusion that the decision of the commission was so unreasonable or inexpedient or against sound policy as to make its action an abuse of its powers could relief be given. This the appeal does not allege, nor is it indicated in any way

in the record of the proceedings of the commission annexed to it. There is nothing in the record to indicate that the commission acted arbitrarily or unreasonably or in excess of its powers in the adoption of the plan proposed by the highway commissioner.

The original application in this case was brought by the state highway commissioner, and decision rendered July 9th, 1926. General Statutes, § 3586, provides: "Said commission may, at any time, for due cause shown, upon hearing had after due notice to all parties in interest, rescind, reverse or alter any decision, order or authorization by it made." The right of the commission, in view of this statute, to reopen the case and rehear the matter after due notice to all parties in interest cannot be controverted.

Section 3610 of the General Statutes provides that the appeal shall be served upon all persons "having an interest adverse to the appellant"; and § 3611 makes such persons parties to the appeal. The provision as to "adverse" interests does not mean that the parties will in fact be adversely affected should the appeal be sustained, but refers rather to the possibility that such action may so affect their interests. *Guarantee, etc., Deposit Co.* v. *Philadelphia, R. & N. E. R. Co.*, 69 Conn. 709, 715, 38 Atl. 792. The expense of abolishing the crossing was allocated by the commission fifty-five per cent upon the State and forty-five per cent upon the railroad company. The company had a direct interest in the order made by the commission which would be affected should that order be set aside. The position taken by the town may quite likely affect adversely the company's interest and the latter is thus not only an interested but a necessary party to the appeal. When, as here, the admitted situation discloses at the start the unavoidable fact that a directly interested party is not before the court, the complaint

invites demurrer for that reason. "Since the fault of the fatal lack of parties is as conclusively apparent from a reading of the complaint as it could be after a hearing on the facts, it was the duty of the trial court to dismiss it upon challenge of its sufficiency." ·Ackerman v. Union & New Haven Trust Co., 91 Conn. 500, 509, 100 Atl. 22.

The contention raised by the third paragraph of the amendment to the reasons of appeal and referred to in the brief of appellant, that the new construction is not dependent upon, or in any way connected with, the elimination of the crossing is not supported by the record. The facts found and recited by the commission in its order of January 31st, 1930, show that the relocation of the trunkline highway, the proposed building of an underpass, and the closing of the old highway at the crossing were all component parts of a plan devised by the commission for the purpose of eliminating a dangerous condition at the grade-crossing.

There is no error.

In this opinion the other judges concurred.