VANDER WERF, Petitioner, v. BD. OF RAILROAD COMMIS-
SIONERS OF SOUTH DAKOTA, Respondent.

(237 N. W. 909.)

(File No. 7238.   Opinion filed September 21, 1931.)

*Parliman & Parliman,* of Sioux Falls, for Petitioner.

*M. Q. Sharpe,* Attorney General, and *Herman L. Bode,* Assistant Attorney General, for Respondent.

RUDOLPH, J. The petitioner, Chris Vander Werf, applied to the board of railroad commissioners for a certificate of public convenience and necessity to operate a class A motor carrier in the transportation of property, for hire between Sioux Falls, S. D., and Colton, S. D., upon a regular schedule. After a hearing the railroad commission denied the application, and the case is now before us on a writ of certiorari. The facts disclosed upon the hearing are as follows: The town of Colton is located approximately 25 miles distant from Sioux Falls and is served by the Chicago, Milwaukee, St. Paul & Pacific Railday Company, and the Great Northern Railway Company and the Railway Express Agency; the Milwaukee furnishes daily, except Sunday, service, carrying mail and express between Sioux Falls and Colton, leaving Sioux Falls at 1:15 p. m., arriving at Colton at 2:00 p. m., and leaving Colton at 10:33 a. m., arriving at Sioux Falls at 11:20 a. m. There is a daily, except Sunday, freight service which leaves Sioux Falls at 2:45 a. m. and arrives at Colton at 4:35 a. m., and since January 1, 1930, this railway has provided a hot and cold car service daily, except Sunday. There is a freight train operating daily which leaves Colton at 8:10 p. m., and arrives at Sioux Falls at 9:40 p. m. The Great Northern Railway provides a daily, except

Sunday, passenger train service by which baggage, cream, mail, and express is carried. This train leaves Sioux Falls at 2:50 p. m., arrives at Colton 3:39 p. m., leaves Colton 11:49 a. m., arrives Sioux Falls 12:40 p. m. The Great Northern freight train service is also daily, except Sunday, leaving Sioux Falls at 7:00 a. m., arriving at Colton at 8:35 a. m.; leaving Colton at 2:25 p. m., arriving at Sioux Falls 4:10 p. m. The Great Northern provides refrigerator and heated car service which leaves Sioux Falls on Wednesdays and Fridays and Watertown on Tuesdays and Saturdays.

Prior to the enactment of chapter 224 of the Laws of 1925, the petitioner, Vander Werf, operated a general trucking business in the vicinity of Colton and between Colton and Sioux Falls. In April, 1925, he filed an application for a class A certificate, seeking authority thereunder to operate between Sioux Falls and Colton, which application was denied by the board. In October, 1928, Vander Werf again applied for a class A certificate which was again denied. The present application was filed on March 24, 1930, and a hearing held thereon at Colton on August 6, 1930, and which was denied December 23, 1930. At the hearing upon this present application a large number of witnesses testified, among them were several retail merchants in the city of Colton and the members of several wholesale distributing firms of Sioux Falls, all of whom expressed a desire for the establishment of motor carrier service between Colton and Sioux Falls. It was shown by this evidence that motor carrier service is more direct than rail service, that the merchant can order in the morning and get his goods in the afternoon, and is relieved from going to the station to get his goods, which are delivered to his door by truck. From the record it appears that the merchants in Colton are in accord in desiring that this class A motor truck service be installed.

In the case of In re Sioux Falls Traction System, 56 S. D. 207, 228 N.W. 179, 181, this court in reviewing an order of public convenience and necessity, said: "The petitioner does not point out wherein the ruling of the Railroad Commission is arbitrary, and we find nothing in the record indicating that the commission acted arbitrarily or unreasonably. The contention that the ruling of the commission is not in accordance with the evidence cannot be considered by this court so long as the order is not shown to

be arbitrary or unreasonable." In reviewing the order under consideration, the only function of this court is therefore to determine whether or not the order is arbitrary or unreasonable. If, after a consideration of the evidence and the law, the order is considered arbitrary or unreasonable, it should be set aside, otherwise it should be sustained. Section 10 of chapter 224, Laws of 1925, provides as follows: "If after hearing upon application for a certificate or permit, the Board shall find, from the evidence, that public convenience and necessity require the authorization of the service proposed, or any part thereof as the Board shall determine, a certificate or permit therefor shall be issued. * * * In determining whether or not a certificate or permit should be issued, the Board shall give reasonable consideration to the transportation service being furnished or that will be furnished by any railroad, or other existing transportation agency, and shall give due consideration to the likelihood of the proposed service being permanent and continuous throughout twelve (12) months of the year and the effect which such proposed transportation service may have upon other forms of transportation service which are essential and indispensable to the communities to be affected by such proposed transportation service or that might be affected thereby." In view of this expressed statutory direction it was incumbent upon the railroad commission in determining the convenience and necessity to give consideration to the existing railroad transportation service furnished the town of Colton and vicinity.

The commission in entering its order denying the application determined that the existing railroad service furnished was adequate to meet the needs of Colton and vicinity. In view of the record we cannot say such determination was arbitrary or unreasonable. The town of Colton is one of the smaller towns of the state serving a restricted community. One freight train leaves Sioux Falls at 2:45 a. m. and arrives at Colton 4:35 a. m., another leaves Sioux Falls at 7:00 a. m. and arrives at Colton at 8:35 a. m. One passenger train carrying express leaves Sioux Falls at 1:15 p. m., arriving at Colton 2:00 p. m., another passenger train carrying express leaves Sioux Falls at 2:50 p. m., arriving at Colton at 3:39 p. m. Service from Colton to Sioux Falls is as complete as the service from Sioux Falls to Colton. Nine refrigerator cars are operated each week between Sioux Falls and Colton.

It is difficult to imagine a more adequate or complete service by rail than that offered by the railroads between Colton and Sioux Falls.

The question now presented is, "Rail service being adequate, is the Order of the Commission arbitrary or unreasonable?" The petitioner maintains that the "railroads are absolutely a thing of the past," and asks the question "Do we want to keep up with the times?" A complete answer to the question asked is to reply that the Legislature has foreclosed this court and the commission from acting without giving consideration to the transportation being furnished by a railroad company. The Legislature was not of the opinion that "railroads are absolutely a thing of the past" when chapter 224, Laws of 1925, was enacted, wherein it was provided that "the Board shall give reasonable consideration to the transportation service being furnished or that will be furnished by any railroad." If "to keep up with the times" means to leave out of consideration, in determining public convenience and necessity, the service being furnished by any railroad, then this court must remain old-fashioned so long as chapter 224, Laws of 1925, exists in its present form.

▮ There is the further legislative direction to the commission to give consideration to "the effect which such proposed transportation service may have upon other forms of transportation service which are essential and indispensable to the communities to be affected." In this connection it is material that the application was for service between Sioux Falls and Colton only. Railroad service from all other ponts of origin other than Sioux Falls would still be essential to Colton and vicinity. The time has not yet arrived in the development of transportation when it is not essential for a community, which has been served for many years by railroads, to not have at least a portion of the service offered by the railroad. That the granting of this application would possibly affect the existing transportation service offered Colton was shown by the fact that, when the applicant discontinued his service, which he was operating for a time without authority, the tonnage carried by the railroad immediately increased. It was not shown that this increase was due entirely to the fact that the applicant was no longer operating, but the increase followed immediately upon

his ceasing to operate, and it was a fact to be considered by the commission.

■ Apart from the legislative direction it is the general rule that a certificate of convenience and necessity should not be granted where there is existing service "over the route applied for, unless the service is inadequate or additional service would benefit the general public, or unless the existing carrier has been given an opportunity to furnish such additional service as may be required." 67 A. L. R. 957. "Where the proposed service for which a certificate is requested is to be rendered in a territory which is already served by another carrier, the Commission must consider whether public convenience and necessity require further common carrier transportation service in that territory, and to this end must consider the adequacy of the service which is already rendered by the existing carrier, even though the service proposed to be rendered by applicant is different from that rendered by the existing carrier, with which it would come in direct competition." 42 C. J. 687.

Many courts have passed upon the questions involved in this proceeding. A review of these authorities would serve no useful purpose, suffice it to say, they quite generally support the texts above cited. The Supreme Court of Michigan in the case of Rapid Railway Co. v. Michigan Public Utilities Commission, 225 Mich. 425, 196 N. W. 518, 520, has seemingly taken a view different from the general rule, but the reason assigned was the lack of legislative direction. That court said: "If it be desirable to clothe the Commission with the power to prevent such competition by refusing to permit motor vehicles to operate, when the service rendered by the steam and electric roads is adequate to the needs and convenience of the public, we think the Legislature should so provide in no uncertain language." Virginia has a statute (Acts 1923 [Ex. Sess.] c. 161, § 3) "that the existence of a railroad or other motor vehicle carrier in the terirtory sought to be served by such applicant shall not be sufficient cause for a refusal to grant him a certificate, but may be considered by the commission as constituting good cause for limiting the number of vehicles which such applicant may operate on the route mentioned in his application," and because of the statute the Virginia court has sustained the commission in granting a certificate where rail service

was adequate. Petersburg, etc., R. Co. v. Commonwealth, 152 Va. 193, 146 S. E. 292, 67 A. L. R. 931. It is apparent from what has already been said with regard to the statutes of this state that neither the Michigan or Virginia cases are pertinent to this decision.

It is no doubt true that it would be a convenience to the merchants of Colton to be able to give their order to the truck driver in the morning and have the goods delivered at their door in the late afternoon, but from the evidence submitted we cannot say that the commission acted arbitrarily or unreasonably when it found that the rail service is adequate, and that the difference in kind of service would not benefit the general public, even though it would be a convenience to the merchants. "This court cannot substitute its judgment for that of the commission, where there is any substantial basis in the evidence of the finding of the commission." In re Sioux Falls Traction System, supra.

It is argued that Hartford, Humboldt, Dell Rapids and Lennox have class A motor carrier service. What reason or conditions prompted the commission to grant such service to these towns are not now before us; each application must necessarily present different conditions, and the decision on each application must rest upon the facts presented.

It is further claimed that the petitioner had a certificate to operate a motor carrier between Colton and Sioux Falls under chapter 124, Laws of 1923, and was operating under such certificate when chapter 224, Laws of 1925, went into effect, and for this reason the 1925 law is unconstitutional in so far as petitioner is concerned. This contention was decided adversely to the petitioner in In re Sioux Falls Traction System, supra.

In view of the statutes of this state and the facts here presented, we cannot hold that the railroad commission acted arbitrarily or unreasonably in denying the application of petitioner. The order of the board of railroad commissioners is affirmed.

POLLEY, P. J., and ROBERTS, J., concur.

CAMPBELL, J. (dissenting). I think the certificate of convenience and necessity sought by petitioner should have been granted.

WARREN, J., dissents.