Application of DAKOTA TRANSPORTATION, INC.,
of Sioux Falls

(291 N. W. 589.)

(File No. 8278.   Opinion filed April 17, 1940.)

**Churchill & Benson,** of Huron, for Appellant, Chicago & N. W. Ry. Co.

**Fuller & Campbell,** of Aberdeen, for Appellant, Chicago, M., St.P. & P. Ry. Co.

**M. Q. Sharpe,** of Kennebec, for Respondent, Dakota Transportation, Inc.

ROBERTS, J. The Dakota Transportation, Inc., respondent herein, made application to the Board of Railroad Commissioners (changed by SDC 52.0101 to Public Utilities Commission) for a class A certificate of public convenience and necessity to operate trucks for carrying property for hire between Sioux Falls and Rapid City. The proposed route was to extend through the intermediate points of Mitchell, Chamberlain, Kadoka and Philip. Respondent operates over this same general route under an interstate permit, and has operated as an intrastate carrier since March 22, 1935, having obtained a class A certificate designed to furnish service to towns between Oacoma and Kadoka.

The Black Hills Transportation Company made application for a class A certificate for the portion of the route from Philip to Rapid City.

The Commission caused notice of hearings upon the applications to be served upon the motor carriers that in the opinion of the Commission might be affected by the

granting of a certificate and upon the railway companies operating through any town or city located on the proposed routes. Representatives of the Chicago & N. W. Ry. Co. and the Chicago, M., St.P. & P. Ry. Co., appeared and resisted the granting of the applications. The record shows that the Commission held hearings at Rapid City and Philip on the two applications and a third hearing at Mitchell on the application of the respondent. At these hearings numerous witnesses testified as to the existence or nonexistence of a public necessity for additional transportation service. Numerous exhibits including maps, time and rate schedules,, traffic reports and tabulations were introduced in evidence and petitions signed by residents residing along the proposed route of the Dakota Transportation, Inc., were submitted to the Commission.

The Commission made an order granting the application of the Black Hills Transportation Company, and denied the application of the respondent, finding that present service is adequate and sufficient and that public convenience and necessity had not been shown. Rehearing on the application of respondent was granted and additional evidence was submitted. The Commission thereafter affirmed its order denying a certificate. From this order there was an appeal to the Circuit Court of Lyman County, and the cause was tried on the record made before the Commission. The Circuit Court rendered judgment reversing and remanding the cause to the Commission with instructions to grant a class A certificate with certain specified restrictions.

The findings of the Commission include the following:

"The applicant proposes, on its westbound movement, to pick up freight at any of the towns on its route between Sioux Falls and Oacoma, for delivery to any of the towns on its route located between Oacoma and Rapid City, but not to accept freight from any of the towns located between Sioux Falls and Oacoma for delivery at points or stations located between Sioux Falls and Oacoma. ' The applicant limited its application in this manner in order to avoid direct competition with Class A motor carrier service now provided between Sioux Falls and Oacoma. The applicant

proposes to haul freight locally to, from and between all of the towns on the proposed route, Oacoma to Rapid City; on its eastbound movement, to pick up freight at any of the towns on its route between Rapid City and Oacoma and deliver it at any point between Oacoma and Sioux Falls. The applicant also proposes under this application the establishment of joint through rates and service with all motor carriers operating to and from any of the towns located along the proposed route. A checkup on the carriers operating to and from these various places shows that said carriers are, for the most part, small operators, star-route mail carriers, and others, some of which have proper motor carrier authority, and the rest have either improper authority or no authority at all. The applicant proposes to establish round-trip daily service, the equipment to be properly heated in winter and cooled in summer. * * * The Chicago & North Western Railway Company, hereinafter referred to as the North Western, furnishes service from Sioux City and Sioux Falls to Rapid City, via Huron and Pierre, and the Chicago Milwaukee, St. Paul and Pacific Railroad Company, hereinafter referred to as the Milwaukee, furnishes service from Sioux Falls to Rapid City, via Chamberlain. The North Western has in effect at this time, and had in effect prior to the filing of this application and during the pendency of this proceeding, pool car service from Sioux Falls to Rapid City. * * * The purpose of the rail carrier in establishing pool car service and the publication of special rates to apply in connection with such service was to meet either actual or potential truck competition between Sioux Falls and Rapid City, and to meet the commercial competition of industries located at the larger jobbing centers outside the State that are doing business in the Black Hills district, such as the Twin Cities, Sioux City and Denver. The commodities covered by the above-mentioned tariff embrace practically all articles which the wholesalers, jobbers and manufacturers of Sioux Falls ordinarily transport by truck. * * *

"A comparison of schedules and rates, as described in this record, clearly shows that it would probably be difficult for any transportation agency to render a more reliable or

less expensive service than provided by the pool car arrangement. The pool car traffic is not distributed at points along the proposed route. The entire carload must be moved to Rapid City, and in the event it contains a shipment, for example, to Philip, that particular shipment must be backhauled. The record shows, however, that a very small percent of the pool car shipments require backhauling, the bulk of the merchandise being consigned either to Rapid City or points beyond. * * *

"It appears that there is sufficient Class A truck service serving all intermediate points between Sioux Falls and Kadoka, via Mitchell and Chamberlain. The jobbers and wholesalers with establishments at Mitchell and Chamberlain, respectively, can ship by truck if they so desire, and they also have rail service if they do not choose to use the truck service. Most of the stations located along the proposed route, with exception of Sioux Falls, Mitchell, Chamberlain and Rapid City, are small towns and their transportation needs are such that they are primarily concerned with service that extends to and from the above-mentioned cities. * * *

"The record herein is entirely void of testimony tending to show that authorized carriers are not fully equipped and otherwise in position to adequately meet all of the reasonable transportation requirements of the shipping public in the territory proposed to be served. In fact, it may be fairly assumed from the record that the carriers in question, both motor and rail, are finding it difficult to obtain sufficient tonnage to warrant continued operation. With the limited tonnage available to authorize an additional agency, the inevitable diversion of traffic, even though such diversion were small in volume, could not be otherwise than harmful to the established carriers.

"The Board, after carefully considering the entire record, finds that the service in effect at the present time is adequate and sufficient to take care of the needs of the public, and that public convenience and necessity have not been shown. We therefore conclude that the application should be denied."

The Circuit Court concluded "that the question of allowing two trucks per day service each way is one upon which under the evidence reasonable minds would probably differ" and that "to deny it was reasonable and that part of the order should be affirmed." The Court, however, determined that public convenience and necessity required the authorization of a part of the proposed service and that a certificate therefor should issue. The judgment of the trial court would require the authorization by the Commission of the service proposed by the daily operation of a truck each way, except that respondent be denied authority to carry freight originating at Kadoka for delivery at Sioux Falls and be denied connections with other common carriers at Rapid City.

■■ The statute relating to motor carriers provides that "no class A motor carriers shall hereafter operate for the transportation of persons or property for hire on any public highway in this state without first having obtained from the Commission a certificate or permit, declaring that public convenience and necessity require such operation." § 8, Chap. 224, Laws 1925, SDC 44.0408. If, upon application for a class A certificate, "the Commission shall find, upon the evidence, that public convenience and necessity require the authorization of the service proposed, or any part thereof as the Commission shall determine, a certificate or permit therefore shall be issued." The Commission in its determination is required to give "reasonable consideration to the transportation service being furnished or that will be furnished by any railroad, or other existing transportation agency" and to give due consideration to "the likelihood of the proposed service being permanent and continuous throughout twelve months of the year and the effect which such proposed transportation service may have upon other forms of transportation service which are essential and indispensable to the communities to be affected' by such proposed transportation service or that might be affected thereby." § 10, Chap. 224, Laws 1925, SDC 44.0410. The Commission, after hearing the evidence, determines whether public convenience and necessity require the establishment

of a proposed service, and in determining the ultimate question as to whether a certificate should issue to an applicant, the Commission is required to consider (1) whether service of a like nature is being rendered in the territory by similar or other means of transportation that is adequate to meet the reasonable requirements of the public convenience and necessity, (2) the ability of the applicant to furnish facilities required for rendering an adequate service, and (3) the effect which the proposed service may have upon existing carriers serving the same territory. In re Sioux Falls Traction System, 56 S. D. 207, 228 N. W. 179; Vander Werf v. Board of Railroad Com'rs, 58 S. D. 586, 237 N. W. 909. The convenience and necessity which the law requires to support an "order for the establishment or extension of motor vehicle transportation service is the convenience and necessity of the public as distinguished from that of an individual or any number of individuals, and this is the primary matter to be considered in determining what constitutes such public convenience and necessity in a particular case, and the propriety of granting a certificate to that effect." 42 C. J. 687, § 121.

■■ The primary consideration for requiring motor carriers to secure such certificates is "to promote good service by excluding unnecessary competing carriers." Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 326, 69 L. Ed. 623, 38 A.L.R. 286. The practical necessity for regulation of this and similar business affected with a public interest is clearly stated by Mr. Justice Brandeis in a dissenting opinion in New State Ice Co. v. Liebmann, 285 U. S. 262, 52 S. Ct. 371, 376, 76 L. Ed. 747: "The purpose of requiring it is to promote the public interest by preventing waste. Particularly in those businesses in which interest and depreciation charges on plant constitute a large element in the cost of production, experience has taught that the financial burdens incident to unnecessary duplication of facilities are likely to bring high rates and poor service. There, cost is usually dependent, among other things, upon volume; and division of possible patronage among competing concerns may so raise the unit cost of operation as to make it impos-

sible to provide adequate service at reasonable rates. The introduction in the United States of the certificate of public convenience and necessity marked the growing conviction that under certain circumstances free competition might be harmful to the community, and that, when it was so, absolute freedom to enter the business of one's choice should be denied." If the need for additional service exists, it is the duty of the Public Utilities Commission to grant certificates of public convenience and necessity to qualified applicants, but when a territory is already sufficiently and satisfactorily serviced and transportation requirements are not sufficient to support additional service the duplication of service unfairly interferes with existing carriers and may affect the need of the public for an efficient permanent service. It is true that certified carriers benefit from the restricted competition, but this is merely incidental in the solution of the problem of securing adequate and permanent service by the avoidance of useless duplication with its consequent impairment of service and increase of rates charged the public. The public interest is paramount.

This Court has held that the reviewing court cannot substitute its judgment for that of the Commission and disturb its finding where there is any substantial basis in the evidence for the finding or where the order of the Commission is not unreasonable or arbitrary. In re Sioux Falls Traction System, supra; Vander Werf v. Board of Railroad Com'rs, supra. The orders of the Commission in the cases cited were before this Court on writs of certiorari. Chapter 81, Laws 2d. Sp. Sess. 1920, purporting to amend Sections 9590-9596, Rev. Code 1919, provided in substance that any party affected by any final order of the Board of Railroad Commissioners could apply to the Supreme Court for writ of certiorari. The act specifically provided: "The review upon the writ shall not be extended further than to determine whether the board of railroad commissioners has regularly pursued its authority * * *. The findings and conclusions of the board on questions of fact shall be final and shall not be subject to review." Section 4. Provisions of the 1920 statute limiting the right of a party aggrieved to apply

to this Court for writ of certiorari were held unconstitutional by Chicago, M. St.P. & P. Ry. Co. v. Board of Railroad Com'rs, 64 S. D. 297, 266 N. W. 660. The legislature subsequently enacted chapter 204, Laws 1937, amending sections 9591-9596, Rev. Code 1919. This statute eliminated the provisions that findings and conclusions of the board shall be final and not subject to review. It is the claim of respondent that the holdings of this Court in Sioux Falls Traction System and Vander Werf cases with reference to the scope of judicial review have been rendered ineffectual by the legislation subsequent in point of time.

■■ The Public Utilities Commission is not a court, and cannot exercise purely judicial functions. Const. § 1, Art. 5; Chicago, M. St.P. & P. Ry. Co. v. Board of Railroad Com'rs, supra. It is an administrative body, authorized to find or determine facts, upon which the statutes then operate.

"There are no constitutional objections arising out of the doctrine of the separation of the powers of government to the creation of administrative boards empowered within certain limits to adopt rules and regulations and authorized to see that the legislative will expressed in statutory form is carried out by the persons or corporations over whom such board may be given administrative power. Boards and commissions of this character do not exercise any of the powers delegated to the legislature. They do not make any laws. They merely find the existence of certain facts, and to these findings of fact the law enacted by the legislature is applied and enforced. As in the case of other executive officers administrative boards may be given the power to perfect the details of a plan the general outlines of which have been laid down in a statute of the legislature." 11 Am. Jur., Const. Law, § 242.

■■ The granting or denying of a certificate of public convenience or necessity is primarily a legislative question. In re Application of Consolidated Freight Co., 265 Mich. 340, 251 N. W. 431; Furstenberg v. Omaha & Council Bluffs St. Ry. Co., 132 Neb. 562, 272 N. W. 756. In a proceeding to review an order of the Commission, administra-

tive or legislative in nature, judicial action cannot supplant the discretionary authority of that body. The review by the court exercising judicial functions only cannot extend beyond the questions whether the Commission has acted within its constitutional or statutory powers and whether its order or determination is supported by substantial evidence and is reasonable and not arbitrary. 51 C. J. 75; 30 Yale L. J. 781; 3 Pound Public Utilities (4th ed.) §§ 915, 920, 932, 937, 939 and 940; Interstate Commerce Commission v. Union P. R., 222 U. S. 541, 32 S. Ct. 108, 56 L. Ed. 308; Publix Cars Inc. v. Yellow Cab & Baggage Co., 130 Neb. 401, 265 N. W. 234; South Chicago Coal & Dock Co. v. Commerce Comm., 365 Ill. 218, 6 N. E.2d 152; Chicago Motor Bus Co. v. Chicago Stage Co., 287 Ill. 320, 122 N. E. 477; Holmes v. Railroad Comm., 197 Cal. 627, 242 P. 486; In re Consolidated Freight Co., supra; Shupee v. Railroad Comm., 123 Tex. 521, 73 S. W.2d 505; Appeal of Town of Andover, 113 Conn. 494, 155 A. 717; New York, C. & St. L. R. Co. v. Singleton, 207 Ind. 449, 190 N. E. 761; State v. Public Service Comm., 335 Mo. 448, 73 S. W.2d 393; Seaberg v. Raton Public Service Co., 36 N. M. 59, 8 P.2d 100; Niagara Falls Power Co. v. Walter Power & Control Co., 267 N. Y. 265, 196 N. E. 51; United Fuel Gas Co. v. Public Service Com., 73 W. Va. 571, 80 S. E. 931; Alexandria Water Co. v. City Council, 163 Va. 512, 177 S. E. 454. An exception to the rule of finality is recognized by the United States Supreme Court where constitutional questions with respect to confiscation of property are involved. St. Joseph Stock Yards Co. v. United States, 298 U. S. 38, 56 S. Ct. 720, 80 L. Ed. 1033.

██ ██   The statute provides that the Circuit Court in its determination of an appeal "may affirm, reverse, or modify" an order of the Commission, or "remand the cause" with directions for further proceedings. § 3, Chap. 204, Laws 1937, SDC 52.0504. The record before the Commission is certified to the Circuit Court, and such record constitutes the record on appeal and no new evidence may be received or introduced. § 1, Chap. 204, Laws 1937, SDC 52.0502. It is not to be presumed that the legislature intended to confer upon the courts power inconsistent with the discharge of

their inherent judicial functions. Though the statute makes no reference to the conclusiveness of the findings of fact by the Commission, we perceive no ground for saying that the legislature intended that the Circuit Court or this Court may try the facts de novo, weigh the evidence, consider matters of a purely administrative nature, and substitute its discretion for that of the Commission.

Applying these principles, we do not find that the order of the Commission is unreasonable or arbitrary and without substantial support in the evidence. We think that it is unnecessary to review each of the matters considered and found in the report of the Commission. The order may still be valid though the correctness of certain findings cannot be sustained. The ultimate question is whether there was substantial evidence to support the order of the Commission. Detailing the testimony would serve no useful purpose and we will make mention only of the more pertinent facts.

The Commission gave consideration to the transportation service being furnished by existing carriers. It appears from the evidence that all the towns and cities on the proposed route have transportation facilities furnished by one or more railroads and that at the time of the filing of the application by respondent there were certified motor carriers operating over sections of the proposed route. A class A carrier was operating between Sioux Falls and Chamberlain, via Mitchell. Another certified carrier was operating between Mitchell and Kadoka, via Chamberlain. The respondent, as we have already indicated, had a class A certificate authorizing it to furnish service to points between Oacoma and Kadoka.

The Black Hills Transportation Company applied to the Commission for a class A certificate to operate between Philip and Rapid City. This application was filed subsequently to that of respondent. Hearings on the applications were had in the instant proceeding. The statute provides that if the Commission shall find that public convenience and necessity require the authorization of a certificate "or any part thereof as the Commission shall deter-

mine" a certificate shall issue. § 10, Chap. 224, Laws 1925, SDC 44.0410. It is urged by counsel for the respondent that the Commission acted unreasonably and arbitrarily in certifying that public necessity and convenience existed as to the application presented by the Black Hills Transportation Company and in refusing to make similar finding as to the application of the respondent. The legislature has granted no rights of priority in an applicant who first applies for a certificate. The public interest clearly did not require the granting of both applications for certificates to operate over the same route. The principal consideration was not which applicant was first in point of time, but an administrative question of deciding which applicant would better serve the public interest was primarily involved. A review of the report and decision of the Commission as to the authority granted to the Black Hills Transportation Company is not before us, and we do not undertake to determine whether or not the Commission acted reasonably in such matter. We hold that the priority of making application for certificate was not a controlling factor in determining which of the two applications, if either, should be granted.

Respondent concedes that present facilities are adequate to move all commerce in and out of the territory, but claims that its proposed service will afford the public certain conveniences and advantages. Respondent has an interstate permit, as we have indicated, extending over the route in question. It proposes to coordinate this service with the intrastate service applied for, to provide shippers with direct connections to and from the principal wholesale and distributing centers in the territory and make possible the shipment of farm products to such centers without transfer or delay, and to encourage local truckers and mail carriers to apply for certificates authorizing motor transportation between stations along this proposed route and inland towns and thus enable such towns to be served with freight service on regular schedule.

Respondent adduced testimony to show that its service would afford shippers a door-to-door pickup and delivery service; that respondent would handle freight with less

packing and crating; that there would be a personal contact between the transportation agency and its patrons; that there is a possibility of securing a volume of traffic now being handled by contract carriers and illegal operators; and that intrastate shipments could be handled more economically by combining the intrastate and interstate services. A number of witnesses expressed the opinion that the proposed service would be more convenient; that shipments would be handled with greater dispatch; and that they intended to patronize the service if respondent were granted a certificate.

The evidence of the appellants tends to show that the certified motor carriers operating between Sioux Falls and Kadoka have adequate equipment to handle all of the business, existing or prospective, in the territory; that these carriers furnish transfer service and operate on regular schedules; that the cost of operating freight trains in the territory proposed to be served by appellant is substantially the same whether the trains carry the present volume of "less than carload lot" shipments or a diminished volume; that the rail carriers are in dire need of revenue from this source, particularly at this time; that traffic in the territory is not sufficient to support the additional service; and that, if an additional agency is granted a certificate, the inevitable diversion of business would be harmful to existing carriers. Representatives of the wholesale and jobbing interests of Sioux Falls opposed the granting of the application on the grounds that the existing service is adequate and that the authorization of a class A truck service would reduce the tonnage to such an extent that it would be impracticable to continue the operation of the pool car service from Sioux Falls to Rapid City.

So far as convenience is concerned, there can be no doubt that, upon the evidence submitted to the Commission, the additional service would be a convenience to many prospective patrons. An application, however, is not measured by the standard of convenience, but by the convenience and necessity of the public as distinguished from that of a number of individuals. The Commission found that

there was no evidence of a public necessity for the proposed service when the present service, both rail and motor, is taken into consideration. Whether this court would reach a similar conclusion is immaterial. As we have pointed out, there can be no substitution of the judgment of the reviewing court for that of the Commission, acting within the field of administrative discretion. The judicial review of the evidence and findings is merely to determine whether the Commission has exceeded its authority by making a determination which is unreasonable or arbitrary. Upon a careful consideration of the record and the statute defining the consideration which shall control the determinations of the Commission, we do not find that the order of the Commission herein is either unreasonable or arbitrary and without substantial support in the evidence.

The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment affirming the order appealed from. No costs to be taxed.

All the Judges concur.